## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF MISSISSIPPI
## ABERDEEN DIVISION

FELICIA ROBINSON                         PLAINTIFF

V.                                CIVIL ACTION NO. <u>1:19cv121</u>-SA-DAS

WEBSTER COUNTY, MISSISSIPPI;
WEBSTER COUNTY
SHERIFF'S DEPARTMENT;
TIM MITCHELL;
SANTANA TOWNSEND;
DAREN PATTERSON;

AND

JOHN DOES 1-30, being those
persons, firms, corporations or other entities
who are in any way responsible to the
Plaintiff for the damages and injuries
sustained herein, and whose identities are       <u>**JURY TRIAL DEMANDED**</u>
at this time unknown, but will be added by
amendment when ascertained                      DEFENDANTS

---

## COMPLAINT

---

       COMES NOW the Plaintiff, FELICIA ROBINSON, by and through counsel, who files this Complaint against the Defendants, WEBSTER COUNTY, MISSISSIPPI; WEBSTER COUNTY SHERIFF'S DEPARTMENT; TIM MITCHELL; SANTANA TOWNSEND; DAREN PATTERSON; and JOHN DOES 1-30, and would show unto the Court as follows, *to-wit*:

# TABLE OF CONTENTS

TABLE OF CONTENTS .............................................................................................................. 2

TABLE OF AUTHORITIES ...................................................................................................... 4

TABLE OF FIGURES ................................................................................................................ 5

PRELIMINARY STATEMENT ................................................................................................ 6

PARTIES .................................................................................................................................... 7

JURISDICTION AND VENUE ................................................................................................. 8

FACTS COMMON TO ALL COUNTS .................................................................................. 10

- *Background Information* ................................................................................................ 10

- *September 2018 (Abusive Incident #1)* ........................................................................ 13

- *October 2018 (Interregnum)* ....................................................................................... 15

- *November 2018 (Abusive Incident #2)* ........................................................................ 15

MISSISSIPPI COMMON LAW CAUSES OF ACTION ....................................................... 25

- *Counts I. & II.  Assault and Battery (as to Patterson only)* ........................................ 25

- *Count III.  False Imprisonment (as to Patterson only)* ............................................... 26

- *Counts IV. & V.  Intentional Infliction of Emotional Distress (as to Patterson only)* ................. 26

- *Counts VI. & VII.  Failure to Supervise Inmate (MTCA) (as to the County, WCSD, and Sheriff Mitchell and Townsend in their representative capacities)* ................................ 27

- *Count VIII.  Gross Negligence (MTCA)*
  *(as to the County, the WCSD, and Townsend in her representative capacity)* ............................ 29

- *Counts IX. & X.  Negligent Infliction of Emotional Distress (MTCA)*
  *(as to Webster County, the WCSD, and Sheriff Mitchell and Townsend  in their representative capacities)* ................................................................................................ 30

FEDERAL LAW CAUSES OF ACTION ............................................................................... 31

- *Additional Background Information Re: Custom or Usage* .......................................... 31

- *Counts XI. & XII.  Violations of Fourth, Eighth, and Fourteenth Amendments (§ 1983) (as to Patterson only)* ............................................................................................... 34

- *Counts XIII. & XIV.  Monell Claims for Patterson's § 1983 Violations (as to Webster County and the WCSD)* ....................................................................... 37

- *Count XV.  Third Party Liability Due to Special Relationship (§ 1983) (as to the Official Defendants)* .................................................................................... 39
- *Count XVI. Third Party Liability Due to State Created Danger (§ 1983) (as to the Official Defendants)* ................................................................................. 42
- *Count XVII. Monell Claim for Failure to Train and/or Supervise Employees or Inmates (as to the County, WCSD, and Sheriff Mitchell in his individual capacity)* ................................. 45
- *Count XVIII. Miscellaneous Relief  (As Webster County and WCSD only)* ............................... 47

DAMAGES ................................................................................................................................. 48

PRAYER FOR RELIEF ............................................................................................................. 49

***

EXHIBITS ..................................................................................................................................... 1
- *Exhibit 1 – Tort Claims Letter* ....................................................................................... 1
  - Notice of Claim Exhibit A ....................................................................................... 14
  - Notice of Claim Exhibit B ....................................................................................... 17
  - Notice of Claim Exhibit C ....................................................................................... 20
  - Notice of Claim Exhibit D ....................................................................................... 22
  - Notice of Claim Exhibit E ....................................................................................... 24
  - Notice of Claim Exhibit F ....................................................................................... 26
  - Notice of Claim Exhibit G ....................................................................................... 28
  - Notice of Claim Exhibit H ....................................................................................... 32
  - Notice of Claim Exhibit I ....................................................................................... 34
  - Notice of Claim Exhibit J ....................................................................................... 36
  - Notice of Claim Exhibit K ....................................................................................... 38
  - Notice of Claim Exhibit L ....................................................................................... 42
  - Notice of Claim Exhibit M ....................................................................................... 51
  - Notice of Claim Exhibit N ....................................................................................... 54
- *Exhibit 2 – Proof of Service of Tort Claim Letter* ..................................................... 57
- *Exhibit 3 – CMS Conditional Payment Report* ........................................................... 63
- *Exhibit 4 – Indictment of Daren Patterson - 2019* ..................................................... 65

# TABLE OF AUTHORITIES

**Cases**

American Bankers' Ins. Co. of Florida v. Wells, 819 So.2d 1196 (Miss., 2001) .................................31

Benavides v. Cnty. of Wilson, 955 F.2d 968 (5th Cir., 1992) ...................................................... 46

Brentwood Acad. v. Tenn. Secondary Sch. Athletic Assn., 531 U.S. 288 (2001) ...................... 34, 35

Brooks v. George Cnty., 84 F.3d 157 (5th Cir., 1996) .................................................................. 32, 37

City of Canton v. Harris, 489 U.S. 378 (1989) .............................................................................. 46

DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189 (1989) ................................... 39, 40

Doe v. Covington Cnty. Sch. Dist., 675 F.3d 849 (5th Cir., 2012) .......................................... 42, 43, 44

Estelle v. Gamble, 429 U.S. 97 (1976) .......................................................................................... 40

Griffith v. Johnston, 899 F.2d 1427 (5th Cir., 1990) ................................................................... 40

Keller v. Attala Cnty., Civil Action No.: 1:16-Cv-136-SA-DAS (N.D. Miss., 2018) ........................39

Lester v. City of Coll. Station, 103 Fed.Appx. 814 (5th Cir., 2004) ........................................... 43

McClendon v. City of Columbia, 305 F.3d 314 (5th Cir., 2002) ................................................. 43

Monell v. New York City Dept. of Social Servs., 436 U.S. 658 (1978) ............................. 32, 34, 39, 42

Peña v. City of Rio Grande City, 879 F.3d 613 (5th Cir., 2018) ................................................. 46

Pierce v. Cook, 992 So.2d 612 (Miss., 2008) ............................................................................... 27

Piotrowski v. City of Houston, 237 F.3d 567 (5th Cir., 2001) ..................................................... 43

Rayborn v. Bossier Parish Sch. Bd., 881 F.3d 409 (5th Cir., 2018) ........................................... 32

Richard v. Supervalu Inc., 974 So. 2d 944 (Miss. App., 2008) .................................................. 26

Rios v. City of Del Rio, 444 F.3d 417 (5th Cir., 2006) ................................................................. 43

Rivera v. Houston Indep. Sch. Dist., 349 F.3d 244 (5th Cir., 2003) ...................................... 32, 33, 34

Saenz v. Heldenfels Bros., Inc., 183 F.3d 389 (5th Cir., 1999) .................................................. 43

Stephens v. Miller, 970 So.2d 225 (Miss. App., 2007) ................................................................ 28

Walton v. Alexander, 44 F.3d 1297 (5th Cir., 1995) .................................................................... 40

Whitten v. Cox, 799 So.2d 1 (Miss., 2000) .................................................................................. 25

Youngberg v. Romeo, 457 U.S. 307 (1982) ................................................................................. 40

**Constitutional Provisions, Statutes, and Rules**

28 U.S.C. § 1331                                                                          8

28 U.S.C. § 1343 .......................................................................................................... 8

28 U.S.C. § 1367 .......................................................................................................... 9

28 U.S.C. § 1391 .......................................................................................................... 10

28 U.S.C. § 2202. ......................................................................................................... 9

42 U.S.C. § 1983 .......................................................................................................... passim

42 U.S.C. § 1988 .......................................................................................................... 8, 49

Fed. R. of Civ. Proc. 11 ............................................................................................... 42

Fed. R. of Civ. Proc. 65 ............................................................................................... 9

Miss. Code Ann. § 11-46-11 (3) .................................................................................. 9

Miss. Code Ann. § 11-46-5 (3) .................................................................................... 29

Miss. Code Ann. §§ 11-46-1, *et seq.* ......................................................................... 9

U.S. Const. amend. IV ................................................................................................. passim

U.S. Const. amend. VIII ............................................................................................... passim

U.S. Const. amend. XIV ............................................................................................... passim

## TABLE OF FIGURES

Figure 1—Exhibit A to Exhibit 1  (Sentencing Order for Daren Patterson) ....................................11

Figure 2—Exhibit B to Exhibit 1  (Indictment of Daren Patterson – 2018) .........................................11

Figure 3—Exhibit C to Exhibit 1  (Order Binding Daren Patterson Over) .........................................12

Figure 4—Exhibit D to Exhibit 1  (Notice of Criminal Disposition) ..................................................12

Figure 5—Exhibit E to Exhibit 1  (Order Revoking Post-Release Supervision) ...........................13

Figure 6—Exhibit G to Exhibit 1  (Incident Report) .........................................................................14

Figure 7—Exhibit H to Exhibit 1  (Statement of Plaintiff) ..............................................................14

Figure 8—Exhibit I to Exhibit 1  (Criminal Affidavit) .....................................................................15

Figure 9—Exhibit J to Exhibit 1  (Phone Call to Santana Townsend) ............................................17

Figure 10—Exhibit K to Exhibit 1  (MSDS for Liquid Fire) ...........................................................18

Figure 11—Exhibit L to Exhibit 1  (Emergency Room Chart) .........................................................19

Figure 12—Exhibit M to Exhibit 1  (Offense Report) ......................................................................21

Figure 14—Exhibit N to Exhibit 1  (Wound Assessment) ...............................................................22

Figure 15 – Exhibit 3 (CMS Conditional Payment Letter) ..............................................................22

Figure 16 – Exhibit 4 (Indictment of Daren Patterson – 2019) ........................................................23

## PRELIMINARY STATEMENT

1.     This is a federal civil-rights/state tort-claims action brought by Felicia Robinson against Webster County, Mississippi; the Webster County Sheriff's Department; former Sheriff Tim Mitchell; former dispatcher Santana Townsend; and Daren Patterson, who was a pretrial detainee/inmate[1] at the Webster County Jail.

2.     On September 1, 2018, Patterson was released from jail on a weekend furlough by Sheriff Tim Mitchell.  That evening, Patterson tried to kill Mrs. Robinson, who is his wife, by pursuing her with a car as she ran.  The Eupora Police Department prepared an incident report and informed Sheriff Mitchell accordingly.  Nevertheless, Sheriff Mitchell released Patterson for another weekend furlough on November 2, 2018, knowing full well that Patterson would return to his wife and terrorize her.

3.     On November 2, 2018, the furloughed Patterson punched a hole in the wall of Mrs. Robinson's house.  In response, she called Townsend for help.  However, instead of dispatching a deputy to retrieve the belligerent Webster County inmate, Townsend gave the phone to another inmate to speak to Patterson.  After talking with the other inmate, Patterson seethed with unbridled fury until he drenched Mrs. Robinson's nearly naked body with sulfuric acid, causing sixteen (16) second- and third-degree burns.

---

1 Hereinafter, the word "inmate" includes pretrial detainees and persons convicted of crimes.

## PARTIES

4.      The Plaintiff, FELICIA ROBINSON ("Mrs. Robinson" or "Plaintiff") is an adult resident citizen of Webster County, Mississippi.

5.      Defendant WEBSTER COUNTY, MISSISSIPPI ("Webster County" or "County") is a political subdivision of the State of Mississippi.  At all material times, the County acted under color of law.  The County may be served with process by delivering a copy of the Summons and Complaint to the Hon. Russell Turner, Chancery Clerk of Webster County, Mississippi, 16 East Fox Avenue, Eupora, Mississippi 39744.

6.      Defendant WEBSTER COUNTY SHERIFF'S DEPARTMENT ("WCSD") is an agency of Webster County.  At all material times, WCSD acted under color of law. WCSD may be served with process by delivering a copy of the Summons and Complaint to Sheriff *pro tempore* Andy McCants (or whomever may have been appointed Sheriff by the time of service), 321 East Gould Avenue, Eupora, Mississippi 39744.

7.      Defendant TIM MITCHELL ("Sheriff Mitchell") is an adult resident citizen of Webster County, Mississippi.  From January 1, 2012, through June 12, 2019, Sheriff Mitchell was the duly elected Sheriff of Webster County, acting under color of law.  He is awaiting sentencing for crimes that he committed while serving as the Webster County Sheriff.  Until he is sentenced, Sheriff Mitchell may be served with process at 760 Hobby Road, Eupora, Mississippi 39744.

8.     Defendant SANTANA TOWNSEND ("Townsend") is an adult resident citizen of Webster County, Mississippi.  At all material times, she was a dispatcher for WCSD who acted under color of law.  Townsend has since been terminated from her duties.  Townsend may be served with process at 120 West Figgatt Avenue, Eupora, Mississippi 39744.

9.     Defendant DAREN PATTERSON ("Patterson") is an adult resident citizen of Webster County, Mississippi.  Patterson may be served with process at the Chickasaw County Jail, 130 Lancaster Circle, Houston, Mississippi 38851.

10.     Defendants JOHN DOES 1-30 are those persons, firms, corporations or other entities who are in any way responsible to the Plaintiff for the damages she has sustained and whose identities are at this time unknown but will be added by appropriate amendments when ascertained.

## JURISDICTION AND VENUE

11.     This Court has federal question jurisdiction under 28 U.S.C. § 1331 and civil rights jurisdiction under 28 U.S.C. § 1343 for claims arising under the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution.  The federal causes of action are brought pursuant to 42 U.S.C. § 1983.  Plaintiff seeks declaratory judgment pursuant to 28 U.S.C. § 2202.  Plaintiff also seeks attorney's fees pursuant to 42 U.S.C. § 1988.  This Court has supplemental jurisdiction over all state law claims referenced herein

pursuant to 28 U.S.C. § 1367. Plaintiff requests injunctive relief pursuant to Rule 65 of the Federal Rules of Civil Procedure.

12.     Regarding her claims made pursuant to the Mississippi Tort Claims Act (Miss. Code Ann. §§ 11-46-1, *et seq.*) ("MTCA"), Plaintiff served the requisite written notices to the Webster County Chancery Clerk (via certified mail) and to Sheriff Mitchell and Sheriff *pro tempore* Andy McCants (both via personal delivery) on or before March 11, 2019.[2] Plaintiff may now file suit because more than ninety-five (95) days have elapsed since these letters were delivered. See Miss. Code Ann. § 11-46-11 (3)(a) & (b).[3] Therefore, sovereign immunity is waived subject to the provisions of the MTCA.

13.     This Court has personal jurisdiction over the parties because each Defendant may be found in this State, because the causes of action accrued in this judicial

_____

[2] See Exhibit "1" (Redacted Tort Claims Letter) and Exhibit "2" (Proof of Service), incorporated herein by reference and made a part hereto.

[3] Miss. Code Ann. § 11-46-11 reads in pertinent part:

> (3) (a) … [F]iling a notice of claim within the required one-year period will toll the statute of limitations for ninety-five (95) days from the date the chief executive officer of the state entity or the chief executive officer or other statutorily designated official of a political subdivision receives the notice of claim.

> (b) No action whatsoever may be maintained by the claimant until … the tolling period expires…."

district, and because personal jurisdiction would not violate the traditional notions of fair play and substantial justice.

14.    Venue is appropriate in the Northern District of Mississippi pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district and because at least one defendant may be found here.

## FACTS COMMON TO ALL COUNTS

### *Background Information*

15.    For years, Mrs. Robinson has been subject to psychological manipulation and physical abuse from her husband, Patterson.   Throughout their turbulent relationship, she has vacillated from wanting his approval to wanting to be free from his oppressive behavior to being afraid for her very life – often experiencing these emotions at the same time. Occasionally, Mrs. Robinson would stand up for herself.  Often, though, she would assume the position of his punching bag.

16.    On January 10, 2014, Patterson was convicted of felony possession of cocaine (second offense). He was sentenced to eight (8) years in the custody of the Mississippi Department of Corrections ("MDOC"), with four (4) years to serve in prison and four (4) years on post-release supervision.   As a condition of his post-release supervision, Patterson was prohibited from breaking any laws of this State or consuming alcohol or drugs.

### *Figure 1 — Exhibit A to Exhibit 1*
### *(Sentencing Order for Daren Patterson)*

**IT IS, THEREFORE, ORDERED** that the defendant, DAREN PATTERSON, be and

he is hereby sentenced to serve a term of EIGHT (8) YEARS with the Mississippi Department

of Corrections. After the defendant has served a period of FOUR (4) YEARS the Mississippi

Department of Corrections is hereby ordered to place him in a program of post-release

supervision pursuant to Section 47-7-34 of the Mississippi Code of 1972 for a period of FOUR

(4) YEARS, provided the defendant has abided by all of the rules and regulations of the

Mississippi Department of Corrections during his period of incarceration. The defendant is

ordered to pay a fine in the amount of $500 and all court costs, fees, and assessments in this

cause all to be paid within ONE (1) YEAR of the date of release from incarceration.

17.     Patterson was released from prison in January 2018. On May 29, 2018, while

on probation, Patterson caused bodily harm to Officer Casey Henderson of the Eupora

Police Department ("Officer Henderson"). Patterson also had methamphetamine on his

person. Patterson was arrested and placed in the Webster County Jail.

### *Figure 2 — Exhibit B to Exhibit 1*
### *(Indictment of Daren Patterson – 2018)*

#### COUNT I
#### DAREN PATTERSON

On or about May 29, 2018 in Webster County, Mississippi, and within the jurisdiction of this
Court, did willfully, unlawfully, feloniously and purposely, knowingly or recklessly caused bodily
injury to Casey Henderson, a Law Enforcement Officer, while he was acting within the scope of
his duty, office or employment, in violation of Section 97-3-7(1)(a)(b) and (14) of the Mississippi
Code of 1972, as amended, constituting a common plan or scheme or related series of acts or
transactions, and against the peace and dignity of the State of Mississippi, and that;

#### COUNT II
#### DAREN PATTERSON

On or about May 29, 2018 in Webster County, Mississippi, and within the jurisdiction of this
Court, did willfully, unlawfully, feloniously and knowingly or intentionally possess one-tenth (0.1)
gram or more but less than two (2) grams of Methamphetamine, a Schedule II Controlled

Substance, in violation of Section 41-29-139(c)(1)(B) of the Mississippi Code of 1972, as
amended, constituting a common plan or scheme or related series of acts or transactions, and
against the peace and dignity of the State of Mississippi, and that;

18.     On July 10, 2018, the Eupora Municipal Court conducted a preliminary hearing.  The Court set bond at $10,000 for the charge of assaulting a police officer.

### Figure 3—Exhibit C to Exhibit 1
### (Order Binding Daren Patterson Over)

> Having heard the evidence at preliminary hearing, the court finds that there is adequate and substantial probable cause to believe that the defendant has committed the felony crime charged. The defendant **Daren Patterson**, is hereby bound over to the action of the Webster County Grand Jury on the charge of **Simple Assault on Police Officer** and ordered to appear before the Circuit Court of Webster County at 9:00 A.M. on the 14th day of January 2018 to await the action of the Grand Jury.  Defendant's bond, returnable to Webster County Circuit Court, is fixed at $10,000.00.

19.     Patterson never posted bond.  Therefore, Patterson remained in the legal and physical custody of the WCSD from May 30, 2018, to November 20, 2018.

### Figure 4—Exhibit D to Exhibit 1
### (Notice of Criminal Disposition)

```
V. Dates Confined 05/30/2018 to 11/20/2018 _____
                         _____ to _____ _____
                         _____ to _____ _____
       Released on Bond Pending Appeal _____ to _____
       Currently Housed In WEBSTER COUNTY JAIL_____
```

20.     On or before September 1, 2018, Sheriff Mitchell made Patterson a trusty at the Webster County Jail.  Patterson was given special responsibilities and privileges by virtue of being a trusty.

21.     On November 20, 2018, Patterson's post-release supervision was revoked due to his May 29, 2018, arrest.  He was sentenced to serve the remaining four years of his 2014 sentence in prison.

*Figure 5 — Exhibit E to Exhibit 1*
*(Order Revoking Post-Release Supervision)*

**ORDERED**

that the Four (4) Years of Post Release Supervision in this cause be and hereby is revoked and the

Defendant, **DAREN PATTERSON**, is ordered to serve the said Four (4) Years in the custody of the

Mississippi Department of Corrections.

**SO ORDERED AND ADJUDGED** on this, the 20ᵗʰ day of November, 2018.

**George M. Mitchell, Jr.**
**Circuit Court Judge**

*September 2018 (Abusive Incident #1)*

22.    On September 1, 2018, while Patterson was still being held in pretrial detention at the Webster County Jail, Sheriff Mitchell authorized Patterson to enjoy an unsupervised weekend jail pass.  Sheriff Mitchell released Patterson even though he knew that Patterson had recently caused bodily injury to a police officer and, as such, that Patterson posed a threat to the health and safety of innocent citizens.

23.    During this unsupervised weekend pass, Patterson returned to Mrs. Robinson.  For all the reasons listed above, Mrs. Robinson felt that she had no choice but to tough it out for a few days.

24.    That night, at or about 8:52 p.m., the wholly unsupervised and highly intoxicated Patterson became involved in a public altercation with Mrs. Robinson at a pool hall in Eupora, Mississippi. This altercation culminated with Patterson hitting Mrs. Robinson in the face and attempting to run over her with a car while she fled on foot.

Mrs. Robinson suffered physical pain and psychological harm as a result of Mr. Patterson's reprehensible behavior.

### *Figure 6—Exhibit G to Exhibit 1*
### *(Incident Report)*

The crowd in the parking lot on Dunlap were yelling Darren Patterson tried to run over Felica Robinson with her vehicle. I had Officer Brandon Chaille run the tag on that white Impala through Webster 911. The tag came back to Felica Robinson. I asked several people that was in the crowd which were yelling did they see who was driving the car. No one responded. I didn't see who was driving but some one told me that Mr. Patterson was driving tried to run over Felica Robinson. Mrs. Robinson and Mr. Patterson ran through the parking lot of the Mason Hall. Officer Chaille tried to locate Mr. Patterson and Mrs. Robinson but was not successful. I removed the beer and liquor from the vehicle.

### *Figure 7—Exhibit H to Exhibit 1*
### *(Statement of Plaintiff)*

up then he took gun down. So I then turned around for 1 sec. with my back turned I knew he was gonna try t run me over so then I hear my car zooming my way he was in it coming I stepped in front of a truck then boom he tried to run me over and hit a mail box. I Felicia Robinson backed up all way to my Church him this dad walking trying to get me till I saw a car a at Liberty Church I flagged it d. w & t jumped in it,

I have read this statement consisting of _____ page(s), each page of which bears my signature, and I do affirm that all facts and statements contained herein are true and correct.

*Felicia Robinson*
Signature of person making voluntary statement

25.     Patterson was subsequently charged with leaving the scene of an accident by the Eupora Police Department on September 4, 2018.  Sheriff Mitchell was notified about this incident.

Page 14 of 51

### *Figure 8 — Exhibit I to Exhibit 1*
### *(Criminal Affidavit)*

---

IN THE NAME AND BY THE AUTHORITY OF THIS MUNICIPALITY:

I, Sgt. Lawrence Caradine, being duly sworn, make this affidavit that Darren Patterson, the DEFENDANT, on or about the 1st day of September, 2018, and within the jurisdiction of this Municipality, did willfully and unlawfully while driving a 2003 Chevrolet Impala, hit a mailbox Dunlap Street, the property of Marcquell Patterson, and ran away from the vehicle at the scene of the accident, against the peace and dignity of the City of Eupora, Mississippi.

*Charge: Leaving the Scene of an Accident [63-3-403]*

                                                    AFFIANT

AFFIANT Sworn to and subscribed before me this the 4ᵗʰ day of September, 2018 .

---

### *October 2018 (Interregnum)*

26.     On October 11, 2018, Sheriff Mitchell gave Patterson a second unsupervised jail furlough.  However, this pass was for only one night.  The time-constrained Patterson did not assault Mrs. Robinson during this furlough.

### *November 2018 (Abusive Incident #2)*

27.     On Friday, November 2, 2018, Sheriff Mitchell gave Patterson a third unsupervised jail furlough for a weekend celebration.  As such, the Sheriff gave Patterson a full weekend pass just as he had done in September.  Sheriff Mitchell placed no apparent restriction on Patterson's conduct other than to require him to return to jail on the morning of Sunday, November 4, 2018.   This gave Patterson a full day on Saturday to sleep off any Friday night debauchery. Sheriff Mitchell did this despite knowing full well of Patterson's predisposition toward violence.

28.     Sheriff Mitchell knew or should have known that Patterson would drink excessively and behave wantonly during his weekend celebration without the hassle of

having to return to jail the next morning. Sheriff Mitchell also knew or should have known that Patterson would spend his weekend of unbridled revelry with his wife – the very woman whom the previously intoxicated Patterson had tried to kill only two months before. Nevertheless, Sheriff Mitchell, acting with reckless disregard for the health and safety of Mrs. Robinson, gave Patterson an unsupervised weekend furlough.

29. During this unsupervised weekend pass, Patterson returned to Mrs. Robinson, who felt even more helpless than before. After all, the County and WCSD law enforcement officers who had possessed actual knowledge of Patterson's propensity for violence toward her were the very ones who had just set Patterson free. She felt trapped.

30. On November 2-3, 2018, while on this unsupervised weekend pass, Patterson engaged in a pattern of malicious and sadistic abuse toward Mrs. Robinson.

31. At approximately 1:00 pm on November 2, 2018, while they were visiting a pool hall in Eupora, Mississippi, Patterson threw a beer can at Mrs. Robinson and punched her in the face. Later that day, after they had returned to Mrs. Robinson's home, Patterson threatened to burn down her house. Patterson then screamed at her saying, "I hate you, you [expletive] [expletive]." Throughout the evening, Patterson was verbally and physically abusive. He even busted a hole in a wall of Mrs. Robinson's home.

32. At 9:23 p.m. that night, shortly after the enraged Patterson had busted a hole in the wall of her house, Mrs. Robinson frantically called Townsend, a WCSD dispatcher, for help. Mrs. Robinson already had Townsend's cell phone number because

they are related. Knowing that Townsend would be at work, Mrs. Robinson felt confident that Townsend would send a deputy to retrieve the out-of-control Patterson. However, instead of sending a deputy to Mrs. Robinson's home to collect the County's violent inmate, Townsend gave the phone to another inmate/trusty who spoke to Patterson. The two trusties talked for approximately seven minutes.

### *Figure 9—Exhibit J to Exhibit 1*
### *(Phone Call to Santana Townsend)*



33.     Aside from Townsend handing the phone to another trusty, none of the Official Defendants[4] made any attempt whatsoever to assist Mrs. Robinson, even though

---

4 The Official Defendants comprise the County, the WCSD, and any Defendant (known or unknown) who was a county employee at the times specified herein.

Patterson was an inmate in their legal and physical custody who should have been retrieved immediately. In fact, after the inmates had finished talking, Townsend failed to keep Mrs. Robinson on the phone. She also failed to dispatch a deputy to aid Mrs. Robinson.

34. After the phone call ended, Patterson became even more enraged. For the next three hours, Patterson's anger grew more intense and insatiable.

35. At approximately 12:30 a.m. on November 3, 2018, Patterson threw Mrs. Robinson on the bathroom floor of her home and punched her repeatedly until she blacked out. Then, Patterson poured "Liquid Fire" drain cleaner, containing sulfuric acid (*i.e.*, the primary component of battery acid), over Mrs. Robinson's nearly naked body, causing severe corrosive burns to her face, neck, chest, arms, and legs.

### *Figure 10 — Exhibit K to Exhibit 1*
### *(MSDS for Liquid Fire)*

```
============ Composition/Information on Ingredients ============

Ingred Name:SULFURIC ACID (SARA 302/313) (CERCLA).  BP: 535F,279C.
    SPEC GRAV: 1.835.
```

36. After being burned alive, the nearly naked Mrs. Robinson, escaped to the adjacent home of Mr. Johnny Lucas. Patterson chased after her. After she arrived at Mr. Lucas's house, Patterson grabbed Mrs. Robinson by her hair, forced her to return to her house, and tried to throw her into the shower — all while refusing to take her to the hospital. Mrs. Robinson attempted to leave, but Patterson resisted her efforts. However, Mrs. Robinson grabbed her keys and found a way to escape to her car. Before she could

drive away, Patterson forcibly jumped into the car and insisted on going with her to the local hospital. Obviously, he wanted to intimidate Mrs. Robinson from detailing to hospital staff what had just transpired.

37. The parties arrived at the North Mississippi Medical Center-Eupora/Webster County Hospital ("NMMC/WCH") at approximately 1:16 a.m. Because the traumatized Mrs. Robinson was being shadowed by her abusive husband, she diffidently stated to the hospital staff that she was "cleaning and slipped and fell in a chemical called 'liquid fire.'" However, the sheer extent of Mrs. Robinson's burns demonstrate that these injuries resulted from far more than a mere slip-and-fall. In fact, her neck damage was so severe, that emergency room staff had to intubate her.

### *Figure 11—Exhibit L to Exhibit 1* ### *(Emergency Room Chart)*

| Triage Quick, ED | Authored Date: 11/3/2018 1:16:00 AM | Authored By: Weeks, Thelma |
|---|---|---|

**Triage Documentation:**

**Arrival Information:**

| | |
|---|---|
| • Reason for Visit | Chemical burns to face, torso, and extremities. Reports that she was cleaning and slipped and fell in chemical called "liquid fire" States "like Drano" within 10 min of arrival to ER |
| • Language Spoken/Understood | English |
| • History Source | patient |
| • Arrived From | home |
| • Mode of Arrival | private automobile |
| • Means of Arrival | ambulatory |
| • Transport Method | ambulatory |
| • Accompanied By | spouse |

| Results Interpretation:<br>• Interpretation of Lab Tests<br>• Radiology Results Interpretation<br>• Radiology Results Interpreted by<br>• Clinical Course | No laboratory abnormalities of acute significance<br>ET Tube in good position<br>Radiologist<br>Poison control called and stated the liquid fire was similar in nature to Drano but stronger. States to rinse the body with copious amounts of water to flush the chemical off the body and then to apply wet to dry dressings. Patient remained hysterical, uncooperative due to pain. Due to the pain along with the burns to the throat/neck and mouth and concern that airway may be compromised, performed RSI and intubated the patient. Patient intubated successfully after one attempt. Called the JMS Burn Center at Central MS Medical Center in Jackson, MS and discussed with Beretta, PA who accepted the patient for Dr. Lineaweazer. Requested for EMS to obtain a helicopter for the patient and UMMC Flight crew in route. Patient remained stable while awaiting for transfer. |

38.      Later that morning, Officer David Fonseca of the Eupora Police Department witnessed Patterson at the hospital.  Officer Fonseca wondered why a "state inmate" would be there.  Upon seeing Deputy Tanner Pritchard of the WCSD at the hospital, Officer Fonseca asked the deputy if he was there to pick up Patterson.  Deputy Pritchard replied that he had no idea that Patterson was there.  Officer Fonseca relayed this information to his superior, Corporal Bradley Frost.

39.      Coincidentally, while Corporal Frost was on patrol that morning, he was flagged down by Vanessa Watson, a family member of Mrs. Robinson, who alerted him that Patterson had poured chemicals on Mrs. Robinson.  Corporal Frost accompanied Ms. Watson to Mrs. Robinson's home and observed the burn spots on the bathroom floor, recording the same on his body cam.  Later that day, Ms. Watson called Corporal Frost wanting to press charges; however, she never came to the station to sign the paperwork. Nevertheless, Corporal Frost did open an investigation into this aggravated assault.

*Figure 12—Exhibit M to Exhibit 1*
*(Offense Report)*

On Saturday, November 3, 2018 during morning briefing Officer David Fonseca told me he saw Daren Patterson at the Webster County Hospital while doing a walk through. Officer Fonseca told me he recognized Daren as a state inmate and was wondering why he was at the Hospital. Officer Fonseca told me he saw Deputy Tanner Pritchard at the hospital and asked him if he was there to pick up Daren (aka Pap). Officer Fonseca said Deputy Pritchard said he did not know Daren was up there and that he was not there to get him. Officer Fonseca said that Daren had burns on his hands and that his girlfriend Felicia Robinson had got burned really badly as well.

***

While on patrol, I Corporal Bradley Frost was flagged down by Felicia Robinson's family member Vanessa Watson who asked me to do a stand by for her at Felicia's house to look for some medicine and stated that she was scared Daren was over there. Vanessa stated that she thought Daren poured some chemicals on Felicia Robinson and she was air lifted to the burn center in Jackson. While at Felicia's house I noticed burn spots in the bathroom which is where Vanessa stated it happened. Vanessa called the Police Department later in the day after the stand by and stated she wanted an investigation started on Daren Patterson because he is trying to kill Felicia and something needs to be done.
I told Vanessa I would be happy to do a report and that I needed someone who was there to come to the Police Department and give a statement and I would get it started. No one showed up. I have bodycam footage of the standby call to Felicia's house.

40.     After being stabilized by emergency room staff, Mrs. Robinson was airlifted that morning to the Merit Health Central burn treatment center in Brandon, Mississippi. There, Mrs. Robinson endured multiple painful skin grafts over several weeks of hospitalization. She was discharged from the burn center on November 27, 2018. However, she has continued to receive burn grafts.

41.     According to her November 27, 2018, medical report, Mrs. Robinson suffered no less than sixteen (16) second- and third-degree burns to her face, neck, chest, bilateral upper extremities, and bilateral lower extremities.

*Figure 13—Exhibit N to Exhibit 1*
*(Wound Assessment)*

1. Rt face measures 14cmX13.2cm, pink with some necrotic tissue present, small amount of yellow drainage present.
2. Left side of face measures 2.5cmX3.4cm, pink, no drainage.
3. Neck measurements 12cmX13cm pink with necrotic tissue, yellow drainage.
4. Chest measurements 21cmX21cm , pink with some necrotic tissue, multiple graft sites, no drainage.
5. Right shoulder measurements 12cmX5cm pink graft site.
6. LUA non removable dressing.
7. LFA measures 24cmX6cm multiple scabbed areas.
8. RFA measures 14cmX7cm graft site, pink with eschar.
9. RUA measures 11.1cmX3cm area with 2 wounds scabbed.
10. Right hand measures 4.5cmX5cm scabbed.
11. Right side of abdomen measures 6cmX0.5cm scabbed
12. Right upper back measures 21cmX19cm pink graft donor sites
13. lower back measures 9.5cmX10 cm area with 3 scabbed wounds
14. Left posterior flank measures 1.8cmX3cm scabbed.
15. Left leg measures 76.5cmX26cm area with multiple burn wounds and two donor sites to lateral thigh, donor sites are pink, burn wounds are pink and scabbed.
16. Right leg measures 68cmX25cm area with multiple burn wounds that are pink/scabbed, 3 donor sites to lateral thigh and a graft below the anterior knee that has some eschar.

42.     Mrs. Robinson has suffered other damages.  She has suffered permanent disfigurement.  She endured painful neck surgery on January 7, 2019, to repair trauma resulting from the altercation.  In May 2019, she had surgery to repair her mouth.  As of today, she has had at least nine (9) surgeries and/or skin grafts.  Moreover, she has received speech therapy, occupational therapy, and physical therapy due to the sadistic abuse she suffered on November 2-3, 2018.   To date, her health care providers have performed services valued at more than $878,000.00[5]  This figure is still climbing.

*Figure 14 – Exhibit 3*
*(CMS Conditional Payment Letter)*

| | |
|---|---|
| Sum of Total Charges | $878,956.61 |
| Total Reimbursed Amount | $134,837.22 |
| Total Conditional Payments | $133,588.38 |

_____

[5] See Exhibit "3" – Redacted CMS conditional payment letter, incorporated herein by reference and made a part hereto.   Mrs. Robinson received this letter from CMS several weeks after she had served her Notice of Claim upon the Defendants.

43.     In addition to experiencing severe burns and permanent disfigurement, Mrs. Robinson has incurred excruciating pain and psychological impairments as a result of this trauma.  Having a prior history with depression and anxiety, the severe trauma has exacerbated her already fragile mental state.  She receives counseling at Community Counseling Services in Eupora, Mississippi.   She also incurred property damage as a result of Patterson's violent behavior (*i.e.*, damage to her house).

44.     On May 21, 2019, Patterson was indicted for aggravated assault and kidnapping by the Grand Jury of Webster County.[6]

### *Figure 15 – Exhibit 4*
### *(Indictment of Daren Patterson – 2019)*

**COUNT I:     DAREN PATTERSON a/k/a "PAP"**

On or about November 2, 2018, in Webster County, Mississippi, and within the jurisdiction of this Court, did willfully, unlawfully, feloniously and purposely or knowingly cause serious bodily injury to Felicia Robinson or did recklessly cause serious bodily injury under circumstances manifesting extreme indifference to the value of human life, in violation of Mississippi Code Section 97-3-7(2)(a)(i), as amended, constituting a common plan or scheme or related series of acts or transactions, and against the peace and dignity of the State of Mississippi, and that;

**COUNT II:    DAREN PATTERSON a/k/a "PAP"**

On or about November 2, 2018, in Webster County, Mississippi, and within the jurisdiction of this Court, did wilfully, unlawfully, feloniously and without lawful authority and with or without intent to secretly confine, forcibly seize and confine, or inveigle or kidnap Felicia Robinson, a human being, with the intent to cause the said Felicia Robinson to be confined or imprisoned against her will, in violation of Section 97-3-53 of the Mississippi Code of 1972, as amended, constituting a common plan or scheme or related series of acts or transactions, and against the peace and dignity of the State of Mississippi.

---

6 See Exhibit "4" – Indictment of Daren Patterson, incorporated herein by reference and made a part hereto.

45. In summary, the Official Defendants had actual notice that Patterson had assaulted Officer Henderson and that he had tried to kill Mrs. Robinson. As such, the Official Defendants knew that Patterson was a specific and credible threat to the health and safety of the general public and, after September 1, 2018, to the health and safety of Mrs. Robinson in particular. Nevertheless, the Official Defendants recklessly disregarded these risks by allowing their inmate, Patterson, to roam free on multiple occasions.

46. Moreover, the Official Defendants, being fully cognizant of the risks to Mrs. Robinson in particular, acted with reckless disregard for her health and safety and with deliberate indifference to her constitutional rights when they allowed their inmate, Patterson, to roam free for a second weekend furlough on November 2, 2018. Even worse, after Mrs. Robinson had called the Official Defendants for help that night while Patterson was in the very act of terrorizing her, they did not even bother to retrieve their inmate. Instead, with reckless disregard for her health and safety and with deliberate indifference to her constitutional rights, the Official Defendants allowed Mrs. Robinson's life to remain in peril. These acts and omissions shock the conscience.

47. As a result, Mrs. Robinson has incurred severe, permanent, and extensive scarring over most of her body, as well as other severe physical and psychological impediments, the full extent of which may never fully be realized. She also has had her constitutional rights violated by persons acting under color of law.

## MISSISSIPPI COMMON LAW CAUSES OF ACTION

### *Counts I. & II.*
### *Assault and Battery (as to Patterson only)*

48.      The preceding paragraphs are incorporated herein by reference as if fully copied in words and figures.

49.      "An assault occurs where a person (1) acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (2) the other is thereby put in such imminent apprehension. A battery goes one step beyond an assault in that a harmful contact actually occurs." Whitten v. Cox, 799 So.2d 1  (Miss., 2000) (citations omitted).

50.      In September 2018, Patterson battered Mrs. Robinson and then chased her with an automobile (*i.e.*, Count I).  In November 2018, Patterson beat Mrs. Robinson and then poured sulfuric acid on her virtually naked body (*i.e.,* Count II).

51.      The malicious acts of Patterson as described herein intended to cause a harmful or offensive contact with Mrs. Robinson, who in turn was placed in such imminent apprehension thereby.  Moreover, Patterson caused this harmful contact to occur on these two occasions, as described herein.

52.      As a direct and proximate result of Patterson's assaults and batteries of Mrs. Robinson, as described herein, Mrs. Robinson has suffered immense and permanent physical and emotional damage.

### Count III.
### False Imprisonment (as to Patterson only)

53.     The preceding paragraphs are incorporated herein by reference as if fully copied in words and figures.

54.     The elements of a false imprisonment claim are "(1) detention of the plaintiff and (2) unlawfulness of that detention." Richard v. Supervalu Inc., 974 So. 2d 944, 949 (Miss. App., 2008).

55.     Patterson detained Mrs. Robinson unlawfully on November 2-3, 2018, when he performed the acts described herein.

56.     As a direct and proximate result of this false imprisonment, Mrs. Robinson suffered immense and permanent physical and psychological damage.

### Counts IV. & V.
### Intentional Infliction of Emotional Distress (as to Patterson only)

57.     The preceding paragraphs are incorporated herein by reference as if fully copied in words and figures.

58.     Patterson inflicted severe emotional distress on Mrs. Robinson in September 2018 when he ran after her with a vehicle (i.e., Count IV) and when he falsely imprisoned, beat, and subsequently burned her in November 2018 (i.e., Count V).

59.     Patterson's acts as described herein were without justification or reason. These acts evoked outrage or revulsion in a civilized society, shocking the conscience. These acts were directed at or intended to cause harm to Mrs. Robinson, who, in turn,

suffered emotional distress that was foreseeable as a result of this intentional act. <u>Cf.</u> <u>Pierce v. Cook</u>, 992 So.2d 612 (Miss., 2008).

60.     As a direct and proximate result of this intentional infliction of emotional distress, Mrs. Robinson suffered immense psychological damage.

*Counts VI. & VII.*
*Failure to Supervise Inmate (MTCA)*
*(as to the County, WCSD, and Sheriff Mitchell and Townsend in their representative capacities)*

61.     The preceding paragraphs are incorporated herein by reference as if fully copied in words and figures.

62.     Mrs. Robinson was engaged in no criminal behavior at any material time.

63.     At all material times, Sheriff Mitchell and Townsend were acting in the course and scope of their duties. Therefore, *respondeat superior* applies to this count, making the County and WCSD liable for their negligent acts or omissions.

64.     At all material times, Patterson was a ward of the County due to his detention at the Webster County Jail.

65.     Like parents do with their wards (*i.e.,* their children), the County and the WCSD have the duty to supervise their wards (*i.e.,* their inmates). The County and the WCSD's duty to supervise inmates is ministerial and non-discretionary.

66.     At all material times, the Official Defendants knew of Patterson's propensity to harm Mrs. Robinson and others. However, with reckless disregard for the

safety and health of Mrs. Robinson and others, the Official Defendants failed to act as reasonably prudent custodians/jailers by:

> **Count VI –** Permitting Patterson to have an unsupervised weekend jail furlough in September 2018 even though they knew he had caused bodily injury to Officer Henderson in May 2018, only three months earlier; and by
>
> **Count VII –** (a) Permitting Patterson to have an unsupervised weekend jail furlough in November 2018 even though they knew that Patterson had caused bodily injury to Officer Henderson in May 2018 and that he had tried to kill Mrs. Robinson in September 2018 during his prior weekend jail furlough; and by (b) permitting Patterson to remain on unsupervised jail furlough in November 2018 even though Mrs. Robinson had called Townsend for help while Townsend was on duty as a WCSD dispatcher;

Cf. Stephens v. Miller, 970 So.2d 225, 227 (Miss. App., 2007).

67.    As a direct and proximate result of the Official Defendants' failure to supervise Patterson, as described herein, Mrs. Robinson suffered incalculable damage to her physical body and to her psychological and emotional wellbeing.  She also suffered property damage to her house.

*Count VIII.*
*Gross Negligence (MTCA)*
*(as to the County, the WCSD, and Townsend in her representative capacity)*

68.     The preceding paragraphs are incorporated herein by reference as if fully copied in words and figures.

69.     On November 2-3, 2018, Townsend was at work at the Webster County Jail. Because she was at work within the time and place of her employment, she is presumed to have acted in the course and scope of her employment.  See Miss. Code Ann. § 11-46-5 (3) ("For the purposes of this chapter and not otherwise, it shall be a rebuttable presumption that any act or omission of an employee within the time and at the place of his employment is within the course and scope of his employment.)  Therefore, *respondeat superior* applies to this count.

70.     Townsend had a non-discretionary, ministerial duty to comply with the requirements set forth by the Mississippi Board of Emergency Telecommunicators Standards and Training and/or other standards established for emergency telecommunicators such as she.  Specifically, Townsend had a duty to remain on the phone with Mrs. Robinson and/or to dispatch law enforcement officers to Mrs. Robinson's residence.  She did neither, thereby breaching her duties.  Townsend acted with reckless disregard for the health and safety of Mrs. Robinson when she handed the phone to an inmate instead of staying on the line or dispatching a deputy to Mrs. Robinson's house.

71.     As the direct and proximate result of Townsend's gross and reckless breach of her duties as an emergency telecommunicator, which is imputed to the County and the WCSD by virtue of the MTCA, Patterson was permitted to wreak havoc upon the person and property of Mrs. Robinson, thereby causing her to suffer incalculable damage to her physical body and to her psychological and emotional wellbeing.

*Counts IX. & X.*
*Negligent Infliction of Emotional Distress (MTCA)*
*(as to Webster County, the WCSD, and Sheriff Mitchell and Townsend*
*in their representative capacities)*

72.     The preceding paragraphs are incorporated herein by reference as if fully copied in words and figures.

73.     The Official Defendants were grossly negligent by failing to supervise Patterson on September 1, 2018 and on November 2-3, 2018, and by ignoring Mrs. Robinson's call for help on November 2, 2018.

74.     The Official Defendants' grossly negligent conduct was a substantial factor in causing Mrs. Robinson's emotional distress on both these occasions.

75.     It was foreseeable that the Official Defendants' conduct would cause Mrs. Robinson emotional distress on both these occasions.

76.     The Official Defendants behaved recklessly in September 2018 when they released Patterson after he had been incarcerated for causing bodily harm to a police officer.   The Official Defendants behaved even more recklessly in November 2018 when they released Patterson after he had tried to kill Mrs. Robinson.

77.     Mrs. Robinson suffered physical injury and mental anxiety due to being hit in the face and being chased with a car by Patterson on September 1, 2018 (*i.e.,* Count IX). She suffered physical injury and mental stress due to being severely abused and burned by Patterson on November 2-3, 2018 (*i.e.,* Count X).

78.     Mrs. Robinson has demonstrated a physical manifestation of injury or demonstrable harm, whether it be physical or mental, that was reasonably foreseeable to the Official Defendants.  Cf. American Bankers' Ins. Co. of Florida v. Wells, 819 So.2d 1196, 1208 (Miss., 2001).  Furthermore, she has demonstrated that the Official Defendants' behavior was wanton, grossly careless, indifferent, or reckless. Cf. id.  Therefore, the Official Defendants negligently inflicted emotional distress upon her.  Cf. id.

79.     As a direct and proximate result of the Official Defendants' negligent infliction of emotional distress, Mrs. Robinson has suffered incalculable damage to her psychological and emotional wellbeing.

## FEDERAL LAW CAUSES OF ACTION

### *Additional Background Information Re: Custom or Usage*

80.     The preceding paragraphs are incorporated herein by reference as if fully copied in words and figures.

81.     Pursuant to § 1983, the County and WCSD are responsible for any unconstitutional action that implemented or executed a policy statement, ordinance, regulation, or decision officially adopted and promulgated by WCSD's officers.  See

<u>Monell v. New York City Dept. of Social Servs.</u>, 436 U.S. 658, 690 (1978). Likewise, the County is responsible for any unconstitutional action that implemented or executed a custom or usage of the County even though said custom or usage may not have received formal approval by the County's official decision-making channels. <u>See</u> <u>id.</u> at 691.

82. "Municipal liability under 42 U.S.C. § 1983 requires proof of 1) a policymaker; 2) an official policy; 3) and a violation of constitutional rights whose moving force is the policy or custom." <u>Rayborn v. Bossier Parish Sch. Bd.</u>, 881 F.3d 409, 416-17 (5th Cir., 2018) (internal citations and quotation marks omitted). "[T]he unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability." <u>Rivera v. Houston Indep. Sch. Dist.</u>, 349 F.3d 244, 247 (5th Cir., 2003) (internal citations and quotations omitted).

83. At all material times, Sheriff Mitchell acted under color of law as the "final policymaker[] with respect to all law enforcement decisions" within the County. <u>See</u> <u>Brooks v. George Cnty.</u>, 84 F.3d 157, 165 (5th Cir., 1996). Thus, Sheriff Mitchell had the authority to adopt, promulgate, and ratify policy statements, ordinances, regulations, decisions, customs, or usages for implementation by WCSD employees and inmates. Likewise, Townsend and Patterson acted under color of law whenever they followed the policy statements, ordinances, regulations, decisions, customs, or usages that were adopted, promulgated, or ratified by Sheriff Mitchell.

84.   On January 14, 2019, the Webster County Grand Jury issued multiple indictments against Sheriff Mitchell and Townsend for official corruption.   Sheriff Mitchell pleaded guilty to some of these charges on June 12, 2019, prompting his immediate resignation.   Although the criminal acts specified in the Mitchell/Townsend indictments may have no direct bearing upon Mrs. Robinson's damages, these crimes nevertheless point to an utter lack of institutional control at the WCSD during Sheriff Mitchell's tenure.

85.   Sheriff Mitchell adopted, promulgated, or ratified one or more policy statements, ordinances, regulations, decisions, customs, or usages that gave Patterson multiple, unsupervised jail furloughs even though Sheriff Mitchell knew that Patterson was a threat to the public in general and, after September 1, 2018, to Mrs. Robinson in particular.   These policy statements, ordinances, regulations, decisions, customs, or usages flowed from the lack of institutional control at the WCSD as evidenced by the Mitchell/Townsend indictments.   Moreover, these policy statements, ordinances, regulations, decisions, customs, or usages were the moving forces behind the constitutional violations referenced herein.

86.   As such, the unconstitutional conduct referenced herein bears the imprimatur of Sheriff Mitchell's official approval or acquiescence.   Therefore, such conduct is not "isolated" for the purposes of imputing municipal liability.   Cf. Rivera, 349

F.3d at 247. Accordingly, the County is liable to Mrs. Robinson for these constitutional violations pursuant to Monell. Cf. id.

*Counts XI. & XII.*
*Violations of Fourth, Eighth, and Fourteenth Amendments (§ 1983)*
*(as to Patterson only)*

87. The preceding paragraphs are incorporated herein by reference as if fully copied in words and figures.

88. Pursuant to the aforesaid policy statements, ordinances, regulations, decisions, customs, or usages that gave Patterson multiple, unsupervised jail furloughs, the Official Defendants provided "significant encouragement, either overt or covert" to Patterson by (1) releasing him from jail without bond on weekend passes and by (2) failing to retrieve him after Mrs. Robinson had called the Official Defendants for help. Cf. Brentwood Acad. v. Tenn. Secondary Sch. Athletic Assn., 531 U.S. 288, 296 (2001). Likewise, Patterson operated as a "willful participant in joint activity with the State or its agents" (1) when he left the Webster County Jail with the express permission of Sheriff Mitchell, who had actual knowledge of his penchant for harming Mrs. Robinson and (2) by virtue of him serving as a trusty, which made him a quasi-employee of the County. Cf. id. Moreover, as an inmate/trusty who was in the legal and physical custody of the County, Patterson was at all material times "controlled by an agency of the State." Cf. id. Furthermore, Townsend's decision to seek assistance from another inmate or trusty after Mrs. Robinson had called for help—instead of staying on the phone with Mrs. Robinson

and dispatching a deputy to her house—further indicates how inmates or trusties such as Patterson were entwined with the execution of governmental policy. Cf. id.

89.     As the result of this pervasive entwinement between inmates or trusties such as Patterson and the Official Defendants who supervised them, Patterson was a "state actor" for § 1983 purposes. Cf. id.

90.     As a state actor, Patterson operated under color of law when he abused, terrorized, attempted to kill, and permanently disfigured Mrs. Robinson on September 1, 2018, (*i.e.,* Count XI) and November 2-3, 2018 (*i.e.,* Count XII). Cf. id. at 295 at n.2. ("If a defendant's conduct satisfies the state-action requirement of the Fourteenth Amendment, the conduct also constitutes action 'under color of state law' for § 1983 purposes.")  In the process, Patterson violated the following constitutional rights of Mrs. Robinson:

    a.  Fourth Amendment.  Pursuant to the Fourth Amendment, which is incorporated to the States via the Fourteenth Amendment, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." Therefore, as a state actor, Patterson had the duty to refrain from (1) seizing (or attempting to seize) Mrs. Robinson's person, (2) prohibiting her from leaving her own home, and (3) abusing her.

    b.  Eighth Amendment.  Pursuant to the Eighth Amendment, which is also incorporated to the States via the Fourteenth Amendment, "[e]xcessive

bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." Therefore, as a state actor, Patterson had the duty to refrain from beating Mrs. Robinson senseless and dousing her nearly naked body with sulfuric acid.

c. <u>Fourteenth Amendment</u>. The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." As such, Mrs. Robinson had a substantive due process right to be free from state-occasioned bodily harm. Therefore, as a state actor, Patterson had the duty to refrain from causing (or attempting to cause) bodily harm to Mrs. Robinson or restraining (or attempting to restrain) her liberty without due process of law.

91. Notwithstanding these constitutional duties, Patterson violated each of them while acting under color of law. Accordingly, he is liable to Mrs. Robinson pursuant to § 1983.

92. As a direct and proximate result of Patterson's violation of Mrs. Robinson's constitutional rights on September 1, 2018 (*i.e.,* Count XI), and November 2-3, 2018 (*i.e.,* Count XII), as described herein, Mrs. Robinson has suffered incalculable damage to her physical body and psychological and emotional wellbeing. She also incurred damage to her home and other property, the extent and amount of which will be adduced at trial.

*Counts XIII. & XIV.*
*Monell Claims for Patterson's § 1983 Violations*
*(as to Webster County and the WCSD)*

93.      The preceding paragraphs are incorporated herein by reference as if fully copied in words and figures.

94.      When Sheriff Mitchell released Patterson from jail on September 1, 2018, for a weekend furlough, even though Patterson had assaulted Officer Henderson only a few months earlier, Sheriff Mitchell adopted, promulgated, or ratified one or more policy statements, ordinances, regulations, decisions, customs, or usages (a) giving inmates or trusties exceptionally broad latitude to do almost as they pleased and/or (b) giving Patterson multiple jail furloughs.  Likewise, by releasing Patterson from jail on November 2, 2018, for another weekend pass, even though Patterson had tried to kill Mrs. Robinson during the previous weekend furlough in September 2018, Sheriff Mitchell advanced these policy statements, ordinances, regulations, decisions, customs, or usages even further.

95.      As such, Sheriff Mitchell – *i.e.*, the chief policymaker for the County, see Brooks, 84 F.3d at 165 – adopted, promulgated, or ratified one or more policy statements, ordinances, regulations, decisions, customs, or usages that effectively gave Patterson carte blanche to do as he pleased during his weekend furloughs from jail.

96.      Pursuant to these policy statements, ordinances, regulations, decisions, customs, or usages, Townsend declined to send a deputy to halt Patterson's furlough on

November 2, 2018, even though she knew that Patterson was acting violently toward Mrs. Robinson. Instead, while acting pursuant to these policy statements, ordinances, regulations, decisions, customs, or usages, which were the moving forces for her decision, Townsend merely directed another inmate to talk to Patterson. In turn, she ratified Patterson's violent behavior, giving him the tacit go-ahead to continue abusing Mrs. Robinson.

97. Therefore, the County and the WCSD are liable for Patterson's acts pursuant to <u>Monell</u> because the aforesaid policy statements, ordinances, regulations, decisions, customs, or usages of allowing Patterson to have multiple weekend furloughs – and to do as pleased while he was on these weekend furloughs – were the moving forces behind Patterson's sadistic abuse of Mrs. Robinson.

98. Mrs. Robinson has suffered permanent physical and psychological damage as the direct and proximate result of these violations of her constitutional rights, privileges, and immunities pursuant to the Fourth, Eighth, and Fourteenth Amendments. Therefore, Mrs. Robinson seeks redress from the County and the WCSD under § 1983.

*Count XV.*
*Third Party Liability Due to Special Relationship (§ 1983)[7]*
*(as to the Official Defendants)*

99.     The preceding paragraphs are incorporated herein by reference as if fully copied in words and figures.

100.     If the Court denies the Plaintiff's <u>Monell</u> claims referenced above, then Mrs. Robinson pleads in the alternative that the County, WCSD, and Sheriff Mitchell and Townsend (in their respective individual capacities) were in a special relationship with Mrs. Robinson and therefore had a constitutional obligation to protect her from their inmate, Patterson.

101.     The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law."

102.     While individuals have a substantive due process right to be free from state-occasioned bodily harm, state officials do not, as a general matter, have a constitutional duty of care to protect individuals from injuries caused by themselves or others. <u>See</u> <u>DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.</u>, 489 U.S. 189, 196-97 (1989) ("As a general matter, then, we conclude that a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause.").

---

7 Much of the legal argument contained in the next two counts is taken word-for-word from <u>Keller v. Attala Cnty.</u>, Civil Action No.: 1:16-Cv-136-SA-DAS, at *6-7 (N.D. Miss., 2018).

However, the Supreme Court has noted that this categorical rule is subject to at least one limited exception:  A state may create a "special relationship" with a particular citizen, requiring the state to protect him from harm, "when the State takes a person into its custody and holds him there against his will." Id. at 199-200.  This "special relationship" arises when a person is involuntarily confined or otherwise restrained against his will pursuant to a governmental order or by the affirmative exercise of state power. Walton v. Alexander, 44 F.3d 1297, 1299 (5th Cir., 1995).  The Supreme Court recognized that this special relationship exists when the state takes custody of a prisoner, Estelle v. Gamble, 429 U.S. 97, 103-04 (1976), or involuntarily commits someone to an institution. Youngberg v. Romeo, 457 U.S. 307, 315-16 (1982). The Fifth Circuit has extended the exception to children in foster care, as well. Griffith v. Johnston, 899 F.2d 1427, 1439 (5th Cir., 1990).

103.    By releasing Patterson from jail for a weekend furlough, even though he knew that Patterson had been violent toward Mrs. Robinson during the previous weekend furlough, Sheriff Mitchell – via a governmental order or the affirmative exercise of state power – adopted, promulgated, or ratified one or more policy statements, ordinances, regulations, decisions, customs, or usages that gave Patterson free reign while on his weekend jail furloughs.  Acting pursuant to these policy statements, ordinances, regulations, decisions, customs, or usages, Townsend declined to send a deputy to interrupt Patterson's weekend furlough even though Mrs. Robinson was in grave peril.  Instead, by way of an affirmative exercise of state power, Townsend directed

another inmate or trusty to speak to Patterson. Thus, Townsend doomed Mrs. Robinson to further confinement by Patterson and to the life-altering abuse that would continue to befall her.

104.    Restated, the Official Defendants, acting in deference to the interests of their inmate/trusty (*i.e.*, Patterson), effectively took Mrs. Robinson's liberty under terms that provided no realistic means of escape while giving her no means of providing for her own care or safety. Even when she got in the car to race to the hospital after being burned, Mrs. Robinson was involuntarily escorted by Patterson who spied on her in the hospital. This occurred due to the Official Defendants' deliberate indifference and/or outrageous conduct. Therefore, Mrs. Robinson was, at all material times, in a special relationship with the Official Defendants, obligating them to protect her. Despite this, the Official Defendants failed to protect Mrs. Robinson—even when they were put on direct notice of Patterson's violent behavior while the same was being directed to her specifically.

105.    Mrs. Robinson has suffered permanent physical and psychological damage as the direct and proximate result of these violations of her constitutional rights, privileges, and immunities pursuant to the Fourth, Eighth, and Fourteenth Amendment. Likewise, she also suffered property damage. Therefore, Mrs. Robinson seeks redress under § 1983 for the violations of her constitutional rights, privileges, and immunities by the Official Defendants while they acted under color of law.

*Count XVI.*
*Third Party Liability Due to State Created Danger (§ 1983) [8]*
*(as to the Official Defendants)*

106.    The preceding paragraphs are incorporated herein by reference as if fully copied in words and figures.

107.    Likewise, if the Court denies the Plaintiff's <u>Monell</u> claims referenced above, then Mrs. Robinson also pleads in the alternative that the County, WCSD, and Sheriff Mitchell and Townsend (in their respective individual capacities) created the danger that she faced.

108.    Courts of Appeals from various circuits have extended the special relationship exception to situations where the state created the danger.  Although the Fifth Circuit has not adopted this theory, it has stated on numerous occasions the elements that such a cause of action would require if it were to recognize such a theory, *to-wit*:  A plaintiff must show [1] the defendants used their authority to create a dangerous environment for the plaintiff and [2] that the defendants acted with deliberate indifference to the plight of the plaintiff."  <u>See</u> <u>Doe v. Covington Cnty. Sch. Dist.</u>, 675 F.3d 849, 865 (5th Cir., 2012) (<u>en</u> <u>banc</u>).  The <u>Covington</u> Court further states:

---

8 Plaintiff acknowledges that this cause of action is not currently recognized by the Court of Appeals for the Fifth Circuit.  However, Plaintiff believes this fact pattern should be persuasive enough for the Court of Appeals to adopt this cause of action.  Therefore, pursuant to Rule 11 of the Federal Rules of Civil Procedure, the undersigned counsel is presenting this legal theory in good faith, believing that this is a nonfrivolous argument for creating new law.

> To establish deliberate indifference for purposes of state-created danger, the plaintiff must show that "[t]he environment created by the state actors must be dangerous; they must know it is dangerous; and ... they must have used their authority to create an opportunity that would not otherwise have existed for the third party's crime to occur." Piotrowski v. City of Houston, 237 F.3d 567, 585 (5th Cir., 2001) (citation and internal quotation marks omitted); see also [McClendon v. City of Columbia, 305 F.3d 314, 326 n. 8 (5th Cir., 2002)] ("To act with deliberate indifference, a state actor must know of and disregard an excessive risk to the victim's health or safety.") (internal quotation marks and alterations omitted). Critically, this court has explained that the "state-created danger theory is inapposite without a known victim." [Rios v. City of Del Rio, 444 F.3d 417, 424 (5th Cir., 2006)] (citation and internal quotation marks omitted); see also Lester v. City of Coll. Station, 103 Fed.Appx. 814, 815–16 (5th Cir., 2004) ("[E]ven if it is assumed that the state-created-danger theory applies, liability exists only if the state actor is aware of *an immediate danger facing a known victim*.") (citing Saenz v. Heldenfels Bros., Inc., 183 F.3d 389, 392 (5th Cir., 1999)) (emphasis added).

Id.

109.   Sheriff Mitchell had possessed actual knowledge that Patterson was a specific and credible threat to Mrs. Robinson's health and safety even before he authorized Patterson's release on or about November 2, 2018.  In addition, Townsend had been telephoned about Patterson's violent behavior toward Mrs. Robinson less than three hours before he poured sulfuric acid over Mrs. Robinson's nearly naked body.  Thus, Sheriff Mitchell and/or Townsend were aware of an immediate danger facing a known victim, *i.e.*, Mrs. Robinson.

110.    Both Sheriff Mitchell and Townsend – and by extension, the County and the WCSD – had actual knowledge of the excessive risk to Mrs. Robinson's health or safety.  Nevertheless, they disregarded this risk to further one or more policy statements, ordinances, regulations, decisions, customs, or usages that allowed Patterson to have prodigious latitude while on weekend furloughs from jail.  As such, the Official Defendants used their authority to create a dangerous environment for the Plaintiff, and they acted with deliberate indifference to her plight by turning a deaf ear to her cries for help. See id.

111.    Restated, the Official Defendants recklessly created and then intentionally perpetuated the danger that caused Mrs. Robinson's constitutional violations even after they had learned that she was in immediate danger.  This shocks the conscience.

112.    Mrs. Robinson has suffered permanent physical and psychological damage as the direct and proximate result of the Official Defendants' decisions (a) to release Patterson from jail on an unsupervised weekend furlough and (b) to permit him to terrorize and disfigure her, all in violation of her constitutional rights, privileges, and immunities pursuant to the Fourth, Eighth, and Fourteenth Amendments.  She has also suffered property damage.  Therefore, Mrs. Robinson seeks redress under § 1983 for these violations of her constitutional rights, privileges, and immunities by the Official Defendants while they acted under color of law.

*Count XVII.*
*Monell Claim for Failure to Train and/or Supervise Employees or Inmates*
*(as to the County, WCSD, and Sheriff Mitchell in his individual capacity)*

113.    The preceding paragraphs are incorporated herein by reference as if fully copied in words and figures.

114.    The County, WCSD, and Sheriff Mitchell (in his individual capacity) failed to provide adequate and competent training or supervision to Townsend and/or to the John Doe Defendants referenced herein.   Likewise, the County, WCSD, and Sheriff Mitchell failed to provide adequate and competent supervision to Patterson.

115.    The County, WCSD, and Sheriff Mitchell were tasked with the non-delegable duty to formulate, oversee, and implement official policies, procedures, practices, and customs that were to be carried out by County/WCSD employees and inmates in accordance with state and federal law.   To that end, the County, WCSD, and Sheriff Mitchell needed to hire competent employees, train them to follow these policies, and supervise them accordingly.   Likewise, the County, WCSD, and Sheriff Mitchell needed to supervise inmates like Patterson.

116.    The training, hiring, or supervision procedures of the County, WCSD, and Sheriff Mitchell – the County's chief law enforcement policy maker – were grossly inadequate.   Sheriff Mitchell was deliberately indifferent in adopting a training, hiring, or supervision policy.   Moreover, the inadequate training, hiring, or supervision policy

directly caused the plaintiff's injuries, as described herein.  Cf.  Benavides v. Cnty. of Wilson, 955 F.2d 968, 972 (5th Cir., 1992).

117.    Restated, Sheriff Mitchell failed to train Townsend as to the proper procedures for assisting a victim seeking help with a belligerent inmate or trusty who was out on furlough.  Upon information and belief, Sheriff Mitchell provided no training whatsoever to Townsend in this regard.  Likewise, Sheriff Mitchell failed to supervise Townsend in the proper handling of calls from victims who were being terrorized by inmates or trusties on furlough.  Moreover, he also failed to supervise Patterson.  A causal connection exists between this lack of training or supervision and the violation of Mrs. Robinson's rights.  In fact, because the need for more or different training or supervision was so obvious, and the inadequacy so likely to result in violations of constitutional rights, this failure to train or supervise constituted deliberate indifference to Mrs. Robinson's constitutional rights.  Cf. Peña v. City of Rio Grande City, 879 F.3d 613, 623 (5th Cir., 2018) (citing City of Canton v. Harris, 489 U.S. 378, 390 at n.10 (1989)); Benavides, 955 F.2d at 972.

118.    As a direct and proximate result of the failure of the County, WCSD, and Sheriff Mitchell to develop, implement, and otherwise devise a proper policy of adequate employee training and supervision, the Plaintiff was deprived of certain constitutional rights, privileges, and immunities guaranteed by the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution.

119.    Had such policies been implemented, the deprivations of civil rights as described herein would not have occurred because every employee of the aforesaid Defendants would have been trained in the proper procedures relating to the constitutional rights of persons similarly situated to the Plaintiff. They would have been supervised accordingly.    Likewise, Patterson would have been supervised as well. Therefore, pursuant to § 1983, the County, WCSD, and Sheriff Mitchell are liable for the deprivation of the Plaintiff's civil rights as described herein, and by extension, for the damages occasioned thereby due to their failure to provide adequate training and/or supervision to Townsend, the John Doe Defendants, and/or Patterson.

*Count XVIII.*
*Miscellaneous Relief*
*(As Webster County and WCSD only)*

120.    The preceding paragraphs are incorporated herein by reference as if fully copied in words and figures.

121.    Plaintiff seeks entry of an order that would enjoin the County and the WCSD from adopting, promulgating, ratifying, or implementing any policy statement, ordinance, regulation, decision, custom, or usage that would permit inmates or pretrial detainees to be released from jail for weekend passes without direct and continuous supervision unless a policy approved by this Court is put into place.

122.    In addition, Plaintiff seeks entry of an order that would require the County and the WCSD to (a) provide adequate supervision to all employees and inmates to

promote compliance with the Court's orders, and to (b) report to the Court on a periodic basis to ensure compliance.

123.    Plaintiff also seeks an order requiring the County to indemnify Sheriff Mitchell, Townsend, and John Does 1-30 for any and all actions or omissions that occurred during the course and scope of their employment or while they acted under color of law in adherence to a policy statement, ordinance, regulation, decision, custom, or usage of the County as adopted, promulgated, or ratified by Sheriff Mitchell.

124.    Finally, Plaintiff seeks an order declaring that each incident of negligence (*i.e.,* September 1, 2018, and November 2-3, 2018) be treated as a separate occurrence for the purposes of MTCA damage caps.

## DAMAGES

125.    The preceding paragraphs are incorporated herein by reference as if fully copied in words and figures.

126.    As a direct and proximate result of the causes of action so referenced above, Mrs. Robinson has incurred severe, permanent, and extensive scarring over most of her body, as well as other severe physical and psychological damages, the full extent of which may never fully be realized.  Moreover, as a direct and proximate result of the causes of actions so referenced hitherto, Mrs. Robinson has had her constitutional rights violated by persons acting under color of law. Mrs. Robinson has incurred and/or will continue to incur pecuniary damages (such as medical charges as well as damages to her property),

and non-pecuniary damages (such as severe pain and suffering, severe permanent disfigurement, severe emotional harm, etc.). She also seeks nominal damages, punitive damages (where applicable), prejudgment interest, post-judgment interest, court costs, and attorney's fees pursuant to § 1988.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, the Plaintiff prays for Judgment against all Defendants, both known and unknown, jointly and severally, for:

1.      Nominal damages in the amount of One ($1) Dollar, plus

2.      Compensatory damages in an amount greater than or equal to Thirty Million ($30,000,000.00) Dollars; plus

3.      Punitive damages against Sheriff Mitchell, Santana Townsend, Daren Patterson, and John Does 1-30 for claims filed against them in their individual capacities in amounts to be determined by the Court; plus

4.      Reasonable attorney's fees pursuant to 42 U.S.C. § 1988; plus

5.      All prejudgment and post-judgment interest; plus

6.      All costs of this matter.

FURTHERMORE, The Plaintiff prays for:

1.      An order declaring that the incidents of negligence (*i.e.,* September 1, 2018, and November 2-3, 2018) be treated as separate occurrences for the purposes of computing damages caps under the Mississippi Tort Claims Act; plus

2.      An order requiring Webster County, Mississippi to indemnify former Sheriff Tim Mitchell, former dispatcher Santana Townsend, and John Does 1-30 for any and all actions or omissions that occurred during the course and scope of their employment or while they acted under color of law in accordance with a policy statement, ordinance, regulation, decision, custom, or usage of the County as adopted, promulgated, or ratified by Sheriff Mitchell; plus

3.      An order requiring Webster County, Mississippi and the Webster County Sheriff's Department to:

      a.      Refrain from adopting, promulgating, ratifying, or implementing any policy statement, ordinance, regulation, decision, custom, or usage that would permit inmates or pretrial detainees to be released from jail for weekend passes without direct and continuous supervision unless a policy approved by this Court is put into place and followed;

      b.      Provide adequate supervision to all employees and inmates to promote compliance with the Court's orders; and

      c.      Report to the Court on a periodic basis to ensure compliance; plus

4.      All general relief, whether legal or equitable, that this Court may deem meet and proper in the premises.

**The Plaintiff demands a jury trial.**

Respectfully submitted this the <u>17th</u> day of June 2019.

FELICIA ROBINSON

By: _____

MATTHEW D. WILSON
(MS Bar #102344; TN BPR# 28175; USPTO 67,842)
The Law Office of Matthew Wilson, PLLC
PO Box 4814, Mississippi State, MS 39762
Telephone: 662-312-5039
Email: starkvillelawyer@gmail.com