**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**ABERDEEN DIVISION**

**FELICIA ROBINSON**                                                                    **PLAINTIFFS**

**v.**                                                    **CIVIL ACTION NO: 1:19-CV-00121-SA-DAS**

**WEBSTER COUNTY, MISSISSIPPI;**
**WEBSTER COUNTY SHERIFF'S DEPARTMENT;**
**TIM MITCHELL; SANTANA TOWNSEND;**
**DAREN PATTERSON; and**
**JOHN DOES 1-30**                                                                    **DEFENDANTS**

<u>**MEMORANDUM OF LAW SUPPORTING**</u>
<u>**JUDGMENT ON THE PLEADINGS FOR WEBSTER COUNTY**</u>

 **NOW COMES DEFENDANT,** Webster County, Mississippi, by counsel, pursuant to Rule

12(c) of the Federal Rules of Civil Procedure, and respectfully submits these authorities in support

of its Motion for Judgment on the Pleadings, as follows:

**I. PREMISE STATEMENT**

1. **FELICIA ROBINSON** was not in custody of Webster County and had not been

  convicted. The State Created Danger Doctrine is not recognized in the 5th Circuit.

  Each of her constitutional theories fail as a matter of law. Federal claims should be

  dismissed.

2. **DAREN PATTERSON** was illegally released. Claims arising under state law

  against Webster County necessarily fail as a matter of law because Mississippi

  applies the public duty doctrine and does not waive immunity for claims arising from

  illegal acts. Should the Court retain jurisdiction, state law claims should be

  dismissed as well.

1

## II. STANDARD

The standard for addressing a motion for judgment on the pleadings under Rule 12(c) is the same as that for addressing a motion to dismiss under Rule 12(b)(6). *In re Great Lakes Dredge & Dock Co.,* 624 F.3d 201, 209–10 (5th Cir. 2010). Thus, to survive moving Defendant's Motion, Plaintiff's Complaint must provide the grounds for entitlement to relief—including factual allegations that when assumed to be true "raise a right to relief above the speculative level." *Cuvillier v. Sullivan,* 503 F.3d 397, 401 (5th Cir. 2007)(quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 553-56 (2007)). The Complaint must allege "sufficient factual matter…to state a claim that is plausible on its face." *Id*. at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 556. A court should not accept "threadbare recitals of a cause of action's elements, supported by mere conclusory statements," which "do not permit the court to infer more than the mere possibility of misconduct." *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949-50 (2009).

## III. FEDERAL CLAIMS

To maintain a cause of action under 42 U.S.C. §1983, the plaintiff must submit "proof of (1) a policymaker, (2) an official policy, and (3) a violation of constitutional rights whose 'moving force' is the policy or custom." *Weeks v. Thompson*, 2007 WL 316261 (N.D. Miss. 2007) (quoting *Monell v. Dep't of Social Services*, 436 U.S. 658, 694 (1978)). Additionally, "a plaintiff must identify a policy or custom that gave rise to the plaintiff's injury before he may prevail." *Gelin v. Hous. Auth. of New Orleans*, 456 F.3d 525, 527 (5th Cir. 2006). The mere assertion that a constitutional violation has occurred is inadequate. *Dismukes v. Hackathorn*, 802 F. Supp. 1442, 1444 (N.D. Miss. 1992). In other words, "the unconstitutional conduct must be directly attributable

to the municipality by some sort of official action.  Isolated incidents of unconstitutional actions by municipal employees will almost never trigger municipal liability." (internal citations omitted) *Weeks*, 2007 WL 316261 at *2.

As discussed below, Plaintiff's §1983 claims fail because each of her constitutional theories fail as a matter of law.

**A.      14TH AMENDMENT CLAIMS**

**FELICIA ROBINSON** was not in custody of Webster County.  The State Created Danger Doctrine is not recognized in the 5th Circuit.  14th Amendment Claims fail as a matter of law.

Notably, "a violation of a state statute alone is not cognizable under § 1983 because § 1983 is only a remedy for violations of federal statutory and constitutional rights" See *Woodard v. Andrus*, 419 F.3d 348, 353 (5th Cir. 2005).   In fact, "there is no general substantive due process right to be protected against the release of criminals from confinement, even if that release violates state law." *Lovins v. Lee*, 53 F.3d 1208, 1209 (11th Cir. 1995).   *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 197-99, 109 S. Ct. 998, 103 L. Ed. 2d 249 (1989)  illustrates the narrow reach of this exception. There, the Supreme Court rejected a § 1983 claim by a boy who alleged the county social services department knew he had been hospitalized repeatedly for suspicious injuries but took no action to protect him from his abusive father. *Id*. at 191-94. In that case, the Supreme Court reasoned,

> nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors. The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security.

3

Respectfully, the only alternative under the 14th Amendment is that of a state created danger theory, something repeatedly rejected in the 5th Circuit.[1]  Moreover, there are numerous fact patterns across the various circuits where tragic facts make no change in the necessary level of constitutional duty recognized in *DeShanney*.[2]  Against this weight of authority, Plaintiff does not offer a single analogous case but to cite *Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 865 (5th Cir.2012)(en banc) which emphatically holds, "An allegation of deliberate indifference may be sufficient to violate a constitutional duty, but it is not sufficient to create the constitutional duty."

Simply put, the Court should dismiss claims arising under the 14th Amendment because such a claim is not cognizable against Webster County because **FELICIA ROBINSON** was not in custody of Webster County.[3]

## B.    4TH AMENDMENT CLAIMS

**FELICIA ROBINSON** was released on a recognizance bond on September 1, 2018.

---

[1]See *Whitley v. Hanna*, 726 F.3d 631, 640 (5th Cir. 2013) (citing *Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 865 (5th Cir.2012)(en banc)("An allegation of deliberate indifference may be sufficient to violate a constitutional duty, but it is not sufficient to create the constitutional duty."); *Kovacic v. Villarreal*, 628 F.3d 209, 214 (5th Cir. 2010); *Bustos v. Martini Club, Inc.,* 599 F.3d 458, 466 (5th Cir. 2010); See, e.g., *Bright v. Tunica Cty. Sch. Dist.*, No. 3:16-CV-197-DMB-RP, 2017 U.S. Dist. LEXIS 146540, 2017 WL 3996409, at 7 (N.D. Miss. Sept. 11, 2017) (collecting cases).

[2]*Davis v. Fulton County*, 90 F.3d 1346, 1351-52 (8th Cir. 1996) (determining that duty jailer did not create a danger particular to an elderly shopkeeper who worked near the jail when the jailer permitted a pretrial detainee to go outside the jail to perform chores and the detainee raped the shopkeeper).

[3]*Hernandez ex rel. Hernandez v. Tex. Dep't. of Protective and Regulatory Servs.*, 380 F.3d 872, 880 n. 1 (5th Cir.2004) ("We emphasize that our court has not yet determined whether a state official has a ... duty to protect individuals from state-created dangers.").

Her arrest for charges of bringing contraband into the Webster County Jail is the only pending charge against her. The legality of her arrest there is not the subject of her Complaint. At the time of her assault by Daren Patterson, she was not in custody. 4th Amendment Claims fail as a matter of law.

To establish a Fourth Amendment claim, there must be a seizure. *Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir.2004) (citation omitted). Yet, Robinson's claim here is premised on Patterson being released from custody, not a seizure of her person by a state actor.

In *United States v. Mendenhall,* Justice Stewart explained that "a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." 446 U.S. 544, 554, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980). This "free to leave" standard has become the "touchstone" of Fourth Amendment seizure jurisprudence. *Rhodes v. Prince,* 360 F. App'x 555, 558 (5th Cir. 2010).

A mere a 'formulaic recitation of the elements' of a constitutional . . . claim . . . . and [is] not entitled to be assumed true." *Iqbal*, 129 S. Ct. at 1951 (quoting *Twombly*, 550 U.S. at 555). Notwithstanding the sheer length of Plaintiff Robinson's Complaint, an domestic act of domestic violence by an illegally released inmate in her home is not a seizure under the 4th Amendment. Respectfully, this theory should be dismissed as to Webster County.

**C.    8TH AMENDMENT CLAIMS**

8th Amendment claims require a conviction. *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th

Cir. 1996) (en banc))[4].  Respectfully, this theory should be dismissed as to Webster County.

## IV. STATE LAW CLAIMS

**DAREN PATTERSON** was illegally released. Claims arising under state law against Webster County necessarily fail as a matter of law because Mississippi applies the public duty doctrine and does not waive immunity for claims arising from illegal acts.

The existence of state law claims turn on the operation of statutory authority which has long been construed under the Public Duty Doctrine in Mississippi:

> A sheriff in this state is charged with the duty to "take into his custody, and safely keep, in the jail of his county" all persons committed thereto. *Miss. Code Ann*. § 19-23-35 (1972). He has "charge of the . . . jail of his county, of the premises belonging thereto, and of the prisoners in said jail." *Miss. Code Ann.* § 19-25-69. Also, "if there be danger of escape . . . of any prisoner therein . . . it [is] the duty of the sheriff or jailer to summon a sufficient guard to protect and secure such prisoner . . . so long as the same may be necessary and no longer." *Miss. Code Ann. §* 19-25-75. These duties imposed upon the sheriff are duties owed to the public as a whole.

> *Robinson v. Estate of Williams,* 721 F. Supp. 806, 807-08 (S.D. Miss. 1989).

The allegations and established law present a choice, neither of which results in a sustainable claim against Webster County under state law. In the absence of a court order or a lawful approval

---

[4]Explaining "The constitutional rights of a convicted state prisoner spring from the Eighth Amendment's prohibition on cruel and unusual punishment, see *Estelle v. Gamble*, 429 U.S. 97, 104, 50 L. Ed. 2d 251, 97 S. Ct. 285 (1976), and, with a relatively limited reach, from substantive due process. The constitutional rights of a pretrial detainee, on the other hand, flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment. See *Bell v. Wolfish*, 441 U.S. 520, 60 L. Ed. 2d 447, 99 S. Ct. 1861 (1979)."

of bail, the furloughs of Daren Patterson by Sheriff Mitchell were illegal.[5] Were it legal for Sheriff

Mitchell to grant a furlough, the Public Duty Doctrine would apply in the alternative.[6]

### A.    WHETHER TO EXERCISE SUPPLEMENTAL JURISDICTION

There being no viable federal question, the concept of legal duty arising under state law is

before the Court to first determine if this case warrants continued federal jurisdiction. Where federal

claims are dismissed before trial, the state claims ordinarily should be dismissed as well. *Dean v.*

*Walker*, 764 F. Supp. 824, 830 (S.D. Miss. 2011)(Citing *Wong v. Stripling*, 881 F.2d 200, 204

(5th Cir. 1989) and *United Mine Workers v. Gibbs*, 383 U.S. 715, 724, 86 S. Ct. 1130, 16 L. Ed. 2d

218 (1966)).   In this situation, "the court must exercise its discretion whether to exercise

supplemental jurisdiction." *Bass v. Parkwood Hosp.*, 180 F.3d 234, 246 (5th Cir. 1999) (citing 28

U.S.C. § 1367(c)(3)). To this end, 28 U.S.C. § 1367, the supplemental jurisdiction statute, provides:

> The district courts may decline to exercise supplemental jurisdiction [if] (1) the claim
> raises a novel or complex issue of State law, (2) the claim substantially predominates
> over the claim or claims over which the district court has original jurisdiction, (3) the

---

[5]*Higgins v. State,* 218 Miss. 883, 891, 56 So. 2d 61, 63 (1952)(Collecting numerous citations for concept of constructive contempt)*; Coleman v. State,* 482 So. 2d 219 (Miss. 1986)(Alcorn County Sheriff convicted of criminal contempt where inmate was allowed to spend weekends at the Holiday Inn with his girlfriend); *Coleman v. State,* 482 So. 2d 221, 222 (Miss. 1986)(Second instance of Alcorn County Sheriff convicted of criminal contempt for refusing to hold a prisoner committed to his charge); *Miss. Code Ann.* §§ 19-25-69 and 97-9-49.

[6]See *Robinson v. Estate of Williams*, 721 F. Supp. 806 (S.D. Miss. 1989), *McQueen v. Williams*, 587 So. 2d 918 (Miss. 1991), *Dependants of Reid v. City of Canton*, 858 So. 2d 163, 165 (Miss. App. 2003), *Gant v. Maness*, 786 So. 2d 401, 405 (Miss. 2001); *Doe v. Mississippi Department of Corrections*, 859 So. 2d 350 (Miss. 2003), *Titus v. Williams*, 844 So.2d 459 (Miss. 2003), *Collins v. Tallahatchie County*, 876 So.2d 284 (Miss. 2004), *Fair v. Town of Friars Point*, 930 So. 2d 467 (Miss. Ct. App. 2006).  As the MTCA has evolved, either holding an inmate or releasing an inmate under authority of a court order would likewise be immune under *Miss. Code Ann.* §11-46-9(1)(a) per *Blake v. Wilson*, 962 So. 2d 705 (Miss. App. 2007), and *DeSoto County v. Dennis*, 160 So. 3d 1154, 1155 (Miss. 2015).

district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c).

Courts in the Fifth Circuit treat the four circumstances enumerated in § 1367 as "statutory factors" to consider when evaluating supplemental jurisdiction. *Enochs v. Lampasas Cty.*, 641 F.3d 155, 159 (5th Cir. 2011). "When a court dismisses all federal claims before trial, the general rule is to dismiss any pendent claims. However, the dismissal of the pendent claims should expressly be without prejudice so that the plaintiff may re-file his claims in the appropriate state court." *Bass*, 180 F.3d at 246 (internal citation and emphasis omitted).

(1) the claim raises a novel or complex issue of State law  YES[7]

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, YES[8]

(3) the district court has dismissed all claims over which it has original jurisdiction,[9] or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c). AGAIN - YES[10]

_____

[7]A former county-wide elected official - one considered a "policy-maker" under distinctly different federal law is claimed by the County to have illegally released an inmate, thereby waiving the protection of statutory immunity under state law. Yet, if it was legal to grant such a furlough there would be no legal duty under long standing authority.

[8]The Plaintiff here has no viable federal theory.

[9]This is the relief requested herein.

[10]Co-Defendant Sheriff has plead guilty in state court.  The Co-Defendant Jailor is under indictment.  Patterson, the Co-Defendant Domestic Abuser, is under indictment in state court. Federal judicial economy weighs in favor of dismissal because "at the time the federal claims were deleted hardly any federal judicial resources, let alone a significant amount of resources, had been devoted to the ... consideration of the ... state law claims (or to any claims)." *Enochs*, 641 F.3d at 159.

In short, the Court need go no further as it should follow the Fifth Circuit's general rule and decline to exercise supplemental jurisdiction over the state law claims.

### B.     PUBLIC DUTY DOCTRINE

The existence of a legal duty is an issue of law. *Foster v. Bass*, 575 So.2d 967, 972-73 (Miss. 1990). When the tort concept of duty is absent, there is no cause of action. *Doe v. Mississippi Department of Corrections*, 859 So.2d 350 (Miss. 2003). A duty owed to the general public is simply not actionable by a private individual. *Maness v. Gant and Alcorn County*, 786 So.2d 401, 405 (Miss. 2001) (adopting the holding in *Robinson v. Estate of Williams*, 721 F. Supp. 806, 808 (S.D. Miss. 1989), that even if a sheriff were negligent, he was protected from liability. Similarly, a municipality has no actionable legal duty to a crime victim whose life was threatened in the presence of police officers when the aggressor returned to make good upon his threats. *Reid v. City of Canton*, 858 So.2d 163, 168 (Miss. Ct. App. 2003).

From and after 1993, the clear language of the Mississippi Tort Claims Act expresses the intent of the Legislature to effect only a limited waiver of immunity. *Miss. Code Ann.* §11-46-3 (1993). No new legal duties are created thereunder. *Miss. Code Ann.* §11-46-9(1)(f)(Supp. 1999). The fact of a claimed injury, alone, is not enough to establish an actionable legal duty:

> [w]hen the duty imposed upon an officer is one solely to the public, the failure to perform it, or an erroneous or negligent performance, is regarded as an injury to the public and not to an individual member of the public; and an individual harmed thereby may not have redress against the officer unless the individual had in it such a direct and distinctive interest as to set him apart from all others of the public in respect to it, and the fact of the injury does not in itself serve to make out the direct and distinctive interest which is essential. *State of ex rel. Boyle v. Matthews*, 196 Miss. 833, 18 So.2d 156, 158 (1944).

Importantly, "the general rule for a private right of action under a statute is that the party

9

claiming the right of action must establish a legislative intent, express or implied, to impose liability for violations of that statute." *Gray v. Beverly Enterprises, Inc.*, 261 S. Supp. 2d 652, 661 (S. Dist. Miss. 2003). The mere violation of a statute or regulation will not support a claim where no private right of action exists. *Gray v. Tunica County*, 13 So.3d 826 (Miss. 2009). Although not specifically decided by the Mississippi Supreme Court, cases where a municipal police officer is directly involved in a traffic accident that injures a bystander should survive dismissal under the above analysis because the statutory rules of the road applicable to even drivers of emergency vehicles contain the express legislative intent required for a private right of action. See *City of Jackson v. Brister*, 838 So.2d 274 (Miss. 2003). In contrast, a lack of duty precludes liability against the State Parole Board for the criminal actions of a parolee from another state who had been accepted for supervision by the State of Mississippi at the time he committed a violent rape because the required expression of legislative intent is absent. *Doe v. State of Mississippi*, 841 So.2d 1127, 1136 (Miss. 2003).

At times, the Complaint refers to Patterson as a "state inmate". ¶38. This is not accurate. As a matter of mutually available public record, Patterson's parole was not revoked until after his assault on Plaintiff (on or about November 20, 2018). As of the time of the furlough and domestic assault, Patterson was bailable and had not yet been indicted.

Plaintiff's Complaint @ ¶83 alleges pursuant to *Brooks v. George Cnty.*, 84 F.3d 157, 165 (5th Cir., 1996), that Sheriff Mitchell "had the authority to adopt, promulgate, and ratify policy statements, ordinances, regulations, decisions, customs, or usages for implementation by WCSD employees and inmates." In short, the Complaint alleges Sheriff Mitchell had the discretionary authority to grant Patterson furloughs. This too is not accurate.

10

Presented in a light most favorable to the Plaintiff, Patterson's extensive criminal record, pending charges for which bail had been allowed and a September 2018 weekend furlough were clearly noted that he should not be granted furlough in the future. Yet, a one-night pass on October 11, 2018, occurred without issue. Yet again, Patterson was allowed a November 2018 weekend furlough during which the felony domestic assault of the Plaintiff occurred. The Complaint attempts to aver - legally - that Patterson's status as a bondable pretrial detainee who had yet to be indicted or revoked by the State means that a Mississippi Sheriff, such as Defendant Mitchell, had the discretion to issue a weekend pass. In short, Plaintiff's cause of action under state law as to Webster County relies upon a belief that Sheriff Mitchell committed an abuse of discretion by granting a legal furlough. Regardless of legal duty, no cause of action exists for this under either the judicial action immunity or discretionary function immunities of the MTCA. See *Miss. Code Ann.* §11-46-9(1)(a) & (d). Moreover, ample authority exists to support the argument that this is an issue of public duty, not actionable under state law in the absence of a special relationship between the injured victim of third party violence and the party authorizing the release.

Mississippi Courts have held that "the statutorily imposed duties of a sheriff in Mississippi are duties owed to the public as a whole and are, therefore, not actionable by a specific plaintiff, absent a compelling showing of extraordinary circumstances." *Maness v. Gant and Alcorn County*, 786 So. 2d. 401, 405 (Miss. 2001) (citing *Robinson v. Estate of Williams*, 721 F. Supp. 806, 808 (S.D. Miss. 1989)). The judge ordered the sheriff to release an inmate convicted of DUI every day so that inmate could go to work. *Id*. at 407. The sheriff allowed the inmate to drive himself to work every day. While out of the jail, the inmate became intoxicated and caused an accident. Under Mississippi Law, to sue a law enforcement officer for failing to protect an individual from private

11

violence, a member of the public must show that the officer owed him a special duty of care. The

harm that he suffered, alone, is not enough to establish this special duty of care:

> [W]hen the duty imposed upon an officer is one solely to the public, the failure to perform it, or an erroneous or negligent performance, is regarded as an injury to the public and not to an individual member of the public; and an individual harmed thereby may not have redress against the officer unless the individual had in it such a direct and distinctive interest as to set him apart from all others of the public in respect to it, and the fact of the injury does not in itself serve to make out the direct and distinctive interest which is essential.

> *State of ex rel. Boyle v. Matthews*, 196 Miss. 833, 18 So.2d 156, 158 (1944)(cited by both *Gant,* 786 So.2d at 405, and *Robinson*, 721 F. Supp. at 808).

In *Gant*, the court further recognized that a sheriff's actions in furtherance of his discretionary

duty to incarcerate prisoners was shielded by qualified immunity. Similarly, where a Mississippi

Sheriff permitted two convicted murderers to escape in spite of a judge's unequivocal order to keep

them confined, the sheriff was still protected by both qualified immunity and the lack of an

actionable legal duty. *McQueen v. Williams*, 587 So.2d 918 (Miss. 1991). Similarly, a cause of

action against a sheriff for his release of an inmate *pursuant* to a judge's authorization constituted

both an immune discretionary act and lack of an actionable legal duty under state law.

In *Graham v. Mississippi Department of Corrections*, 522 So.2d 219,223 (Miss. 1988), a claim

that the department should have provided additional background information to the parole board

prior to a consideration of a subject for parole was not viable because the department has no control

over parole decisions and no statutorily imposed legal duty to provide information to the board.

Similarly, in the case of *Reid v. City of Canton, et al.*, 858 So. 2d 163 (October 7, 2003), several

police officers and aldermen of the City of Canton were sued by the wrongful death beneficiaries of

a crime victim. The victim was a private security guard who had sprayed his killer with mace prior

12

to arrest. *Id.* During the arrest, within the presence of the arresting officers, the maced man threatened to kill the security guard. *Id.* Upon release, the arrestee made good on his threat. *Id.* The grant of summary judgment was affirmed on the basis that the defendants owed no legal duty to the deceased. *Id.*

The case of *Doe v. Mississippi Department of Corrections*, 859 So. 2d 350 (Miss. 2003), addressed a situation where the State of Mississippi had accepted an out-of-state parolee for supervision pursuant to *Miss. Code Ann*. §47-7-71 (2000). *Id.* The parolee had previously been charged with stalking one female student and indicted for raping another. *Id.* The Mississippi charges never went to trial because the parolee fled the state. *Id.* After an absence of several years to serve time in Illinois on multiple charges as a violent offender and a sex offender, the parolee was allowed to return to Mississippi. *Id.* Here, his assigned parole officer failed to seek revocation of the subject's parole for a clear violation, and then failed to visit the parolee at his home, as required by policy. *Id.* The parolee then raped a student at the University of Mississippi. *Id.* The subsequent suit by the student failed for lack of an actionable legal duty. *Id.*

The case of *Collins v. Tallahatchie County*, 876 So. 2d 284,289 (Miss 2004), addressed a claim where the victim's estranged husband made calls threatening to kill her. *Id.* A local judge signed a warrant, but it was never delivered to the sheriff. *Id.* The estranged husband was never arrested. A short time later, he shot the victim twice and then took his own life. *Id.* The subsequent suit by the victim was dismissed based upon a finding that the actions of the county officials were discretionary. *Id.*

The case of *Fair v. Town of Friars Point*, 930 So. 2d 467 (Miss. Ct. App. 2006), addressed legal duty and law enforcement immunity in the context of police officers who charged a subject

13

with simple assault on his girlfriend, when they could have charged him with domestic violence instead. *Id.* The subject was on parole for having killed his wife. Because the charges were only for simple assault, his parole officer did not revoke his parole. *Id.* The subject bonded out of jail and then returned to kill the girlfriend. *Id.* The Court of Appeals affirmed summary judgment, finding that the only statute close to providing a ministerial duty was the Mississippi's Domestic Violence Statute, *Miss. Code Ann.* § 99-3-7(3)(a), and *Miss. Code Ann.* § 93-21-27 specifically provided immunity to the officers for not making an arrest pursuant to the statute. *Id.*

In sum, either Sheriff Mitchell had authorization by the judicial officer who set the bond and the statutory discretion to release Patterson pursuant to that bond (not actionable if authorized by a statute which does not create a private right of action) or it was illegal to release Patterson. The later case is established by the pleadings and public court documents, which in turn puts this outside the MTCA.

### C. ILLEGAL RELEASE

It was illegal to furlough Patterson, an inmate held pursuant to a felony bond awaiting action of a grand jury without either approving the bond or securing a court order authorizing his release.

> "Constructive contempt has been defined as 'any act calculated to impede, embarrass, obstruct, defeat, or corrupt the administration of courts of justice, when the act is done beyond the presence of the court.'

> *Higgins v. State,* 218 Miss. 883, 891, 56 So. 2d 61, 63 (1952)

The case of *Coleman v. State,* 482 So. 2d 219 (Miss. 1986) discusses a case where the Sheriff of Alcorn County was held in contempt of court for deliberately allowing two prisoners to leave the jail for a short period of time without permission of the court. The Mississippi Supreme Court affirmed the conviction because it found nothing to support defendant's claim that he was authorized

14

as administrator of the jail to release prisoners at his discretion.

By agreement the proof at trial on the contempt charges was consolidated and showed Coleman had allowed James Lee Tolbert, a convicted murderer, to be released for a weekend in April of 1983, without bond and without a deputy being with him. The release had not been recorded on the jail docket. On two prior occasions, per separate circuit court orders, Tolbert had been released under bond, and the releases had been recorded.

Proof at trial also showed Bruce Allen Boches was in Coleman's custody after conviction on drug charges and pending sentencing. On at least two occasions he was released at the request of his attorney and his girlfriend picked him up. On none of these occasions was an entry made in the jail docket book. An Alcorn County Jailer/Deputy testified Coleman had told him Boches was spending those weekends at the Holiday Inn.

The sole issue presented to this Court by Coleman is whether the evidence supported a finding of criminal contempt. Coleman urges that under Miss. Code Ann., § 97-9-49(2), (Supp. 1984), he had discretion and authority as the administrator of the jail to allow prisoners to leave. He urges that his exercise of discretion was not criminal contempt as he had not intentionally refused to obey the court's decree. However, if he was mistaken as to the extent of his authority, such mistake was not with intent and therefore, he was not guilty.

*Miss. Code Ann*., § 97-9-49(2), (Supp. 1984), became effective subsequent to the actions of Coleman and is of no benefit to him. The statute states:

> * * *
> (2) Anyone confined in any jail who is entrusted by any authorized person to leave the jail for any purpose and who wilfully fails to return to the jail within the stipulated time, or after the accomplishment of the purpose for which he was entrusted to leave, shall be considered an escapee and may be punished by the addition of not exceeding six (6) months to his original sentence.

Factually, it does not apply to the actions of *Coleman* on review herein.

The record establishes that Coleman had previously obeyed court orders in releasing prisoners and recording the ordered releases on the jail docket. It was made quite clear that on the weekends Coleman had allowed Tolbert and Boches to leave the jail, without court order, no jail docket entry had been made to document their absence. This proof shows beyond a reasonable doubt Coleman knew exactly what his duties were; overstepped the bounds of his authority; and is guilty of criminal contempt.

15

> There is no evidence to the contrary. We hold proof sufficient and affirm his convictions; $500.00 fine and thirty (30) days confinement on each charge to run concurrently; the thirty (30) days confinement to be suspended upon payment of the fine within thirty (30) days.
>
> *Id.*, 482 So. 2d at 220.

The second case of *Coleman v. State,* 482 So. 2d 221, 222 (Miss. 1986) discusses another instance with the Sheriff of Alcorn County refusing to incarcerate a convicted state prisoner. The Mississippi Supreme Court again affirmed a conviction of constructive contempt against the Sheriff. The discussion of the legal authority of the Sheriff follows:

> Citing Miss. Code Ann. §§ 19-25-69 and 97-9-49, appellant argues that the sheriff has charge of the courthouse and prisoners therein and that the sheriff is authorized to release, for a limited time, those in his custody. This Court agrees with the state, however, which contends that appellant's reliance on §§ 19-25-69 and 97-9-49 is misplaced and that the sheriff does not have the authority to release a prisoner from jail under the circumstances of the case sub judice without procuring a court order allowing such release.
>
> ....
>
> Under common law it is a misdemeanor for sheriff or jailer having lawful charge of a prisoner to voluntarily or negligently permit him to depart from his custody, no matter how short a time the departure might be.
>
> *Id.*, 482 So. 2d at 222.

## D.     FAILURE OF CLAIMS

The <u>Mississippi Tort Claims Act</u> (<u>MTCA</u>) establishes the exclusive civil remedy against governmental entities and its employees for acts or omissions that give rise to a lawsuit. *Miss. Code Ann.* § 11-46-7 (2002). The <u>MTCA</u> waives the State's common-law tort immunity as to certain acts within the course and scope of employment, but excepts from that waiver twenty-five categories of acts for which governmental entities continue to enjoy immunity from suit. As a practical matter, an employee acting within the course and scope of employment is individually immune.[11]

---

[11]See *Duncan v. Chamblee*, 757 So.2d 946, 949–50 (¶¶ 14–18) (Miss.1999) (holding that the trial court properly dismissed the plaintiff's gross negligence claim against a government

Conversely, Plaintiff does not get to sue the County claiming "negligence" to the extent these officers actually were engaged in an intentional tort, criminal activity or matters not in furtherance of the County's business.[12]

> *Miss. Code Ann. §11-46-5* provides in part that:
>
> (2) For the purposes of this chapter an employee shall not be considered as acting within the course and scope of his employment and a governmental entity shall not be liable or be considered to have waived immunity for any conduct of its employee if the employee's conduct constituted fraud, malice, libel, slander, defamation or any criminal offense other than traffic violations.
>
> (3) For the purposes of this chapter and not otherwise, it shall be a rebuttable presumption that any act or omission of an employee within the time and at the place of his employment is within the course and scope of his employment.
> *Miss. Code Ann. §11-46-7* provides in part that:
>
> For the purposes of this chapter, an employee shall not be considered as acting in the course and scope of his employment and a governmental entity shall not be liable or be considered to have waived immunity for any conduct of its employee if the employee's conduct constituted fraud, malice, libel, slander, defamation or any criminal offense.

### E.     NATURE OF THE CONDUCT

Multiple cases articulate conduct which either equates to the prohibited conduct set forth in

---

employee, who was acting within the course and scope of her employment and immune from personal liability).

[12]See *Maas v. City of Ocean Springs, Miss.*, 2012 WL 2603620, at *3 (S.D. Miss. July 5, 2012)(holding that the plaintiff's negligence claim was not cognizable under Mississippi law since it was based on alleged intentional torts stemming from his arrest); *Howard v. Wilson,* 62 So.3d 955, 957 (¶ 9) (Miss.2011) (providing that neither "a negligent assault" nor "a 'negligent battery' "is legally cognizable);   See *Carter v. Reddix*, 115 So.3d 851, 858–59 (¶¶ 16–18) (Miss. Ct. App.2012) (finding that the trial court properly construed the plaintiff's claim for reckless infliction of emotional distress as one for intentional infliction of emotional distress).

*Miss. Code Ann.* §11-46-5 (2), or does not. It is what it is.[13]

In the case of *Zeigler v. University of Mississippi Medical Center*, 877 F. Supp. 2d 454 (S.D. Miss. 2012) two plaintiffs alleged that employees of the Medical Center made false statements maliciously during a hearing on unemployment benefits. The case was heard on summary judgment in the Southern District of Mississippi. There, the court held that the employees' defamation claim against employer state university medical center, did not fall within waiver of sovereign immunity, under <u>Mississippi Tort Claims Act</u> (<u>MTCA</u>), waiving sovereign immunity only for torts of employees committed in the course and scope of their employment with a governmental entity, since the co-workers' allegedly defamatory statements were not within the course and scope of their employment. A helpful contrast is found in the Mississippi Supreme Court Case of <u>*City of Jackson v. Harris*</u>, 44 So.3d 927, 930 (Miss. 2010), where an officer ran a red light at approximately 87 miles per hour causing a death and in turn plead guilty to culpable negligence manslaughter. In spite of the conviction, the Mississippi Supreme Court held that the officer was in fact within the course and scope of employment within the meaning of §11-46-5. The testimony of the officer is helpful:

> Jeffrey Middleton testified that in June 2005, he was working the 2 p.m.-to-10 p.m. shift. On the night of the accident, he had responded to a traffic incident involving a drunk driver. He had transported the impaired driver to the Hinds County Correctional Facility and had left the facility a few minutes after 10 p.m. to head to the hospital, where the other driver was being treated.
>
> Middleton testified that it was a cool, clear night and that traffic was extremely light on Highway 18. Middleton stated that he only remembers seeing a red car turning in

---

[13]*Howard v. Wilson*, 62 So. 3d 955, 957 (Miss. 2011)("Wilson attempts to characterize her suit as one not for an intentional tort, but rather for negligence. This alleged act of negligence is described by Wilson in the complaint as follows, 'Jocelyn Howard, maliciously, reckless[ly], negligently, and violently attacked Lyshell Wilson with a pair of scissors. Jocelyn Howard repeatedly stabbed Lyshell Wilson ... causing serious bodily injuries during the heinous attack.'").

front of him and a traffic signal showing a green light. Middleton testified that he suffered a head injury in the accident and as a result, could not remember any other details of that night. He also stated that he was on overtime at the time of accident. Middleton testified he was terminated from his job because of the accident, and that he had pleaded guilty to culpable-negligence manslaughter for Harris's death.

Justice Lamar wrote for the court explaining that while §11-46-7(2) provides immunity for "criminal offenses," §11-46-5(2) specifically excludes "traffic offenses" from this immunity. In short, the plain language of the two statutes quoted above must be read together in harmony. The case of *Howard v. Wilson*, 62 So. 3d 955, 957 (Miss. 2011), makes it clear that the nature of the acts, not the spin afforded by mere pleadings, is what controls here. In this case, the plaintiff attempted to make an attack with a pair of scissors into something other than an intentional tort. The court noted that "Wilson attempts to characterize her suit as one not for an intentional tort, but rather for negligence. This alleged act of negligence is described by Wilson in the complaint as follows, 'Jocelyn Howard, maliciously, reckless [ly], negligently, and violently attacked Lyshell Wilson with a pair of scissors. Jocelyn Howard repeatedly stabbed Lyshell Wilson ... causing serious bodily injuries during the heinous attack.'" *Id*.

Clearly, Mississippi law provides that a government employee's actions do not result in the government being held liable for an illegal act.

## F.      NOT IN FURTHERANCE OF COUNTY BUSINESS

These cases summarized conduct which equates to defeating the rebuttable presumption set forth in *Miss. Code Ann.* §11-46-5 (3). This point is succinctly stated in a Southern District of Mississippi opinion:

Mississippi law provides that an activity must be in furtherance of the employer's business to be within the scope and course of employment. *Estate of Brown By and Through Brown v. Pearl River Valley Opportunity, Inc.*, 627 So.2d 308 (Miss.1993).

19

Whether an activity is within the scope and course of employment turns upon whether the activity carries out the employer's purposes or advances his interest directly or indirectly. *Estate of Brown*, 627 So.2d at 311. Thus, "if a servant steps aside from the master's business for some purpose of his own disconnected with his employment, the relation of master and servant is temporarily suspended and this is so 'no matter how short the time and the master is not liable for his acts during such time.' " *Id*. at 311. An employee's personal unsanctioned recreational endeavors are beyond the course and scope of his employment. See also *Cook Constr. Co., Inc. v. Smith*, 397 So.2d 536 (Miss.1981). *L.T. ex rel. Hollins v. City of Jackson*, 145 F. Supp.2d 750, (S.D. Miss. 2000) *affirmed* 245 F.3d 790.

Following *Hollins*, the Mississippi Supreme Court addressed the same issue in *Cockrell v. Pearl River Valley Water Supply Dist.*, 865 So. 2d 357, 362 (Miss. 2004), where a police officer allowed a young female subject to ride in the front seat of his patrol car without wearing handcuffs while en route to jail. He then pulled over in a church parking lot where he embraced her and began stroking her back and hair telling her that things would be fine. A second more forceful incident occurred two days later when the young female came to the police station to retrieve her driver's license. In an effort to avoid dismissal of the governmental entity employer, the plaintiff in *Cockrell* argued that there was a genuine issue of disputed fact because the conduct was analogous to consoling a victim of a crime and was not criminal conduct. The Mississippi Supreme Court disagreed finding that "when Officer James diverted from his employment for personal reasons, he was no longer acting in the furtherance of his employer's interests".[14] The holding of the court made it clear that it was not necessary to reach the more difficult question of whether a kiss or forced embrace constituted assault.[15]

---

[14]*Id*. at Page 362.

[15]See *Id.* at 362-363 ("Because we find that Officer James was not acting within the course and scope of his employment with the result that the District is not liable under the MTCA, we need not address whether Officer James's conduct constituted a criminal offense.").

Clearly, Mississippi law provides that a government employee's activity, resulting in tort liability for employer, must be in furtherance of the employer's business to satisfy requirement that it be within the scope and course of employment.

In *Dennis v. Travelers*, 234 So.2d 624 (Miss.1970), the plaintiff's claim was one of malicious prosecution. Having missed the applicable one-year statute of limitations, the plaintiff included "irresponsible" and "should have known" in the complaint in an attempt to show that the defendant negligently committed the intentional tort of malicious prosecution. The Mississippi Supreme Court rejected the attempt, holding, "There can be no escape from the bar of the statute of limitations applicable to intentional torts by the mere refusal to style the cause brought in a recognized statutory category and thereby circumvent prohibition of the statute." *Id*. at 626.[16]

## G.    NO WAY TO SIDE STEP ILLEGAL RELEASE

We know from *Coleman I*, that the operative statute was violated criminally when Sheriff Coleman had previously obeyed court orders in releasing prisoners and recording the ordered releases on the jail docket, but then allowed releases without court order and no such documentation on the jail docket. Yet, Felicia Robinson also takes an alternate angle tied to Jailor Townsend.

The lengthy complaint before the Court attempts to pose the theory that liability under the MTCA could arise by someone else besides Sheriff Mitchell failing to act. Here, Felicia Robinson called a relative who worked at the jail via cell phone seeking to calm Patterson down. Her Complaint states:

---

[16]Similarly, See *City of Mound Bayou v. Johnson*, 562 So.2d 1212 (Miss.1990)(Having missed the proper deadline, the plaintiff failed in his attempt to characterize an assault and battery as an act of negligence.).

> Knowing that Townsend would be at work, Mrs. Robinson felt confident that Townsend would send a deputy to retrieve the out-of-control Patterson. However, instead of sending a deputy to Mrs. Robinson's home to collect the County's violent inmate, Townsend gave the phone to another inmate/trusty who spoke to Patterson ... an inmate in their legal and physical custody who should have been retrieved immediately. In fact, after the inmates had finished talking, Townsend failed to keep Mrs. Robinson on the phone. She also failed to dispatch a deputy to aid Mrs. Robinson.

Case: 1:19-cv-00121-SA-DAS, [Doc. #1], Pages 17-18.

Respectfully, the futility of claims under state law ends where our discussion began, with the case of *Robinson v. Estate of Williams,* 721 F. Supp. 806, 807-08 (S.D. Miss. 1989). There, the plaintiff alleged the deceased Sheriff of Clarke County (*Estate of Williams*) and his staff were negligent in the escape of two dangerous inmates and by failing to properly inform other law enforcement authorities and the general public of the escape. The statutes construed by *Coleman I and II*, *supra*, were foundational for the finding of public duty which eliminated the claim under state law. A Southern District Case of injuries from escaped inmates was distinctly different in the case of *Dean v. Walker*, 743 F. Supp. 2d 605, 608 (S.D. Miss. 2010) because law officers were actively chasing the escapes at the time of a collision with the plaintiffs. That simply is not the case here as *Felicia Robinson theorizes Townsend should have ... sent a deputy ... stayed on the phone ... or somehow caused the return of Patterson*. In short, Felicia Robinson alleges violation of duty arising under the statutory duties deemed public. Simply shifting focus to Townsend is not effective to articulate an actionable legal duty. Because, just like the allegations against the *Estate of Williams*, the case before the Court is all about "an inmate in their legal and physical custody who should have been retrieved immediately". There is no private cause of action for this under the Public Duty Doctrine.

**WHEREFORE, PREMISES CONSIDERED,** Defendant Webster County respectfully

requests that this Court consider the respective claims and authorities presented by the parties and rule:

    1) That all federal claims herein should be dismissed;

    2) Follow the Fifth Circuit's general rule and decline to exercise supplemental jurisdiction over the state law claims; or,

    3) Proceed to consider state law claims as well and dismiss them under the Public Duty Doctrine and the Mississippi Tort Claims Act.

**RESPECTFULLY SUBMITTED,** this the 15th day of August, 2019.

**JACKS | GRIFFITH | LUCIANO, P.A.**

By:    /s/ ***Daniel J. Griffith***

       Daniel J. Griffith, MS Bar No. 8366
       Mary McKay Griffith, MS Bar No. 100785
       Attorneys for Defendant Webster County Sheriff's Department

Of Counsel:

**JACKS | GRIFFITH | LUCIANO, P.A.**
P. O. Box 1209
150 North Sharpe Avenue
Cleveland, MS 38732
telephone: (662) 843-6171
facsimile: (662) 843-6176
cell: (662) 721-7323
Email: dgriffith@jlpalaw.com
     mgriffith@jlpalaw.com
     www.jlpalaw.com

## CERTIFICATE OF SERVICE

I, Daniel J. Griffith, attorney of record for Defendants, Tim Mitchell (Officially) and Santana Townsend (Officially), do hereby certify that I have this day caused a true and correct copy of the above and foregoing *Memorandum in Support of Judgment on the Pleadings for Webster County, Mississippi,* to be delivered by the ECF Filing System which gave notice to all counsel of record who have appeared herein.

Matthew D. Wilson, Esq.
Law Office of Matthew Wilson, PLLC
212 East Main Street
Starkville, MS 39759
Phone: (662) 312-5039
Email: starkvillelawyer@gmail.com
**Attorney for Plaintiff**

William R. Allen, Esq.
Allen, Allen, Breeland & Allen, PLLC
214 Justice Street
P.O. Box 751
Brookhaven, MS 39602
Phone: (601) 833-4361
Email: wallen@aabalegal.com
**Attorney for Defendants Tim Mitchell and Santana Townsend, Individually**

**DATED** this 15th day of August, 2019.

   /s/ ***Daniel J. Griffith***
Daniel J. Griffith