IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

FELICIA ROBINSON                                                                    PLAINTIFF

V.                                                    CIVIL ACTION NO. 1:19-CV-121-SA-DAS

WEBSTER COUNTY MISSISSIPPI,
WEBSTER COUNTY SHERIFF'S DEPARTMENT,
TIM MITCHELL, SANTANA TOWNSEND, and
DAREN PATTERSON                                                               DEFENDANTS

ORDER AND MEMORANDUM OPINION

Felicia Robinson initiated this action on June 17, 2019, by filing her Complaint [1] against

Webster County, Mississippi, the Webster County Sheriff's Department, former Webster County

Sheriff Tim Mitchell (in his official and individual capacity), former Webster County Dispatcher

Santana Townsend (in her official and individual capacity), and her husband, Daren Patterson.

Presently before the Court is a Motion to Strike [31] filed by Robinson, as well as multiple Motions

for Judgment on the Pleadings filed by various parties [18, 20, 22, 26, 35]. Each of the motions is

ripe for review.[1]

*Factual and Procedural Background*

In May 2018, Daren Patterson was arrested by the Webster County Sheriff's Department

for assaulting a police officer and for possession of methamphetamine. After failing to post bond,

Patterson remained in the custody of the Webster County Sheriff's Department until November

2018.[2]

---

[1]   Robinson also filed a Motion for Setting of Hearing on Pending Motions [50], requesting that the Court
allow the parties an opportunity to make oral arguments in connection with the pending motions. The Court
finds that the issues raised in the motions can be adequately addressed without a hearing. No hearing will
be held, and the Motion [50] is denied.
[2]   Patterson had previously been convicted of a felony drug possession in January 2014 and was sentenced
to serve four years in MDOC custody and four years on post-release supervision. The May 2018 arrest
occurred while Patterson was on supervised release.

According to Robinson's Complaint [1], while Patterson was in the custody of the Webster County Sheriff's Department, Webster County Sheriff Tim Mitchell appointed Patterson as a trusty of the jail. During Patterson's period of incarceration, on September 1, 2018, Sheriff Mitchell granted Patterson a "weekend jail pass." During that weekend, Patterson was involved in an altercation with Robinson, his wife, at a pool hall in Eupora, Mississippi. According to Robinson, Patterson assaulted her and attempted to kill her by running over her with his vehicle. As a result of that incident, Patterson was charged by the Eupora Police Department with leaving the scene of an accident. Robinson further avers that Sheriff Mitchell was aware of this incident. Patterson was granted an additional "jail furlough" by Sheriff Mitchell on October 11, 2018. No altercations occurred during Patterson's October 11, 2018 furlough.

Sheriff Mitchell again granted Patterson a "weekend pass" on the weekend of November 2, 2018. Robinson contends that, during the November 2, 2018 weekend pass, Patterson subjected her to "malicious and sadistic" abuse. Specifically, Robinson alleges that on the afternoon of November 2, 2018, Patterson threw a beer can at her, punched her in the face, and threatened to burn down her home. Later that evening, Patterson allegedly punched a hole in the wall of Robinson's home and subjected her to verbal and physical abuse, causing Robinson to fear for her life. At approximately 9:23 p.m. that night, Robinson made a call to Dispatcher Santana Townsend, who was a dispatcher with Webster County at the time, seeking law enforcement assistance. Robinson purportedly placed the call to Dispatcher Townsend's cell phone, rather than the general phone number for the Webster County Sheriff's Department, because she had a personal relationship with Dispatcher Townsend.[3] Dispatcher Townsend did not dispatch law enforcement to Robinson's residence but instead placed another trusty on the phone to speak to Patterson to

---

[3]   As noted in her *pro se* Answer and Counterclaim [25], Dispatcher Townsend disputes that this phone call ever occurred.

calm him down. Patterson became even more agitated following the phone conversation and never left Robinson's residence. Law enforcement was never dispatched to Robinson's home.

At approximately 12:30 a.m. the following morning, Patterson, while still in an enraged state, purportedly threw Robinson on the bathroom floor, punched her repeatedly, and poured "Liquid Fire" on her in an apparent attempt to burn her alive. After a struggle, Robinson eventually escaped from Patterson and tried to travel to the hospital to seek treatment for her injuries, which included significant burns. She was unable to leave the residence without Patterson, and she traveled to the hospital with Patterson in the passenger seat of her vehicle. When Robinson and Patterson arrived at the hospital in the early morning hours of November 3, 2018, Robinson received extensive medical treatment for her injuries and was later transferred to a burn treatment center in Brandon, Mississippi. Patterson eventually returned to the Webster County Jail and was released from custody sometime later.

Robinson initiated this action on June 17, 2019, by filing her Complaint [1] against Webster County, the Webster County Sheriff's Department, Sheriff Mitchell, Dispatcher Townsend, and Patterson. Robinson's Complaint sets forth eighteen different counts, including various Section 1983 and state law claims, and requests compensatory and punitive damages. In the first ten counts of her Complaint, Robinson asserts a litany of state law claims, including claims for assault, battery, false imprisonment, and intentional infliction of emotional distress against Patterson; failure to supervise an inmate and negligent infliction of emotional distress claims against Webster County, the Webster County Sheriff's Department, Sheriff Mitchell, and Dispatcher Townsend; and a gross negligence claim against Webster County, the Webster County Sheriff's Department, and Dispatcher Townsend in her representative capacity. Robinson also asserts various Section 1983 claims. Specifically, she asserts claims against Patterson for violations of her Fourteenth,

Fourth, and Eighth Amendment rights, as well as separate claims against Webster County and the Webster County Sheriff's Department on the basis that those entities are liable for Patterson's purported violations of her constitutional rights. Robinson also asserted a claim for failure to train and supervise against Webster County, the Webster County Sheriff's Department, and Sheriff Mitchell. Dispatcher Townsend responded to Robinson's Complaint by filing a *pro se* Answer and Counterclaim [13], asserting that many allegations in Robinson's Complaint are false and constitute defamation of character. Although Patterson was served with process on June 20, 2019, he has not filed an answer or any other responsive pleading in this cause, and the Clerk has entered a default against him.

On August 15, 2019, Webster County, the Webster County Sheriff's Department, Sheriff Mitchell, and Dispatcher Townsend filed a joint Motion for Judgment on the Pleadings [18] seeking dismissal of all duplicate official capacity claims against Sheriff Mitchell and Dispatcher Townsend. Webster County Sheriff's Department also moved for dismissal on the basis that it lacks capacity to be sued [20]. Webster County filed a separate Motion for Judgment on the Pleadings seeking dismissal of all claims against it [22], arguing that Robinson's Section 1983 claims fail as a matter of law and that the Court should decline to exercise supplemental jurisdiction over the state law claims or, alternatively, also grant judgment in its favor on those claims. Sheriff Mitchell filed a separate Motion for Judgment on the Pleadings [35], contending he is entitled to qualified immunity.

Additionally, Robinson filed a Motion for Judgment on the Pleadings as to Dispatcher Townsend's Counterclaim [26]. Finally, Robinson filed a Motion to Strike [31], arguing that Webster County should be judicially estopped from contending that Patterson was not in its custody at the time of the subject incident.

*Analysis and Discussion*

As set forth above, Robinson's Motion to Strike [31] and the various Motions for Judgment on the Pleadings [18, 20, 22, 26, 35] are currently before the Court. The Court will address each of the pending Motions in turn.

*I. Robinson's Motion to Strike*

Rule 12(f) of the Federal Rules of Civil Procedure places upon district courts the authority to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). "[M]otions to strike defenses are generally disfavored and rarely granted." *Blount v. Johnson Controls, Inc.*, 328 F.R.D. 146, 148 (S.D. Miss. 2018) (quoting *Solis v. Bruister*, 2012 WL 776028, *7 (S.D. Miss. Mar. 8, 2012)). A defense should be stricken only when it "cannot, as a matter of law, succeed under any circumstance." *U.S. v. Renda*, 709 F.3d 472, 479 (5th Cir. 2013).

In her Motion [31], Robinson contends that, pursuant to the doctrine of judicial estoppel, the Court should strike Webster County's defense that Patterson was illegally released and not in the County's custody on the night of the subject incident. Robinson also argues that Webster County should be estopped from making this argument in its briefs and other filings with the Court. Robinson's Motion specifically concerns the following two statements contained in Webster County's Answer to the Complaint:

> 19.     Patterson never posted bond. While out of jail, he held the status of an escapee. He was not in the custody of Webster County.
>
> . . .
>
> **EIGHTH DEFENSE**
>
> Patterson's release was illegal. It was not the act of Webster County. It is not attributable to Webster County under state or federal law.

Robinson argues that Webster County should be judicially estopped from contending that Patterson was not in its custody at the time of the subject incident due to the content of the Notice of Criminal Disposition which it filed in Patterson's state court criminal case, *State of Mississippi v. Daren Patterson*, Webster County Circuit Court Cause No. CR2013-041. Specifically, Robinson relies upon the Notice of Criminal Disposition's indication that Robinson was confined in the Webster County Jail at all times from May 30, 2018 to November 20, 2018. Robinson argues that "[b]y way of [the] Notice of Criminal Disposition, which is signed by the Circuit Clerk and bears the Seal of the Circuit Court, the County represents that Daren Patterson was 'confined' in the 'Webster County Jail' from '5/30/2018 to 11/20/2018.'" Stated differently, Robinson argues that because Webster County in the Notice of Criminal Disposition represented that Patterson's dates of confinement included the date on which the subject incident occurred, Webster County should be prohibited from now taking the position that Patterson was not in its custody and control when he committed the purported assault. According to Robinson, Webster County's defenses on this point "are insufficient as a matter of law pursuant to the doctrine of judicial estoppel because they assert legal positions contrary to one previously asserted by the County in the matter of *State of Mississippi v. Daren Patterson*[.]"

"Judicial estoppel is a common law doctrine that prevents a party from assuming inconsistent positions in litigation." *Kane v. National Union Fire Ins. Co.*, 535 F.3d 380, 385 (5th Cir. 2008) (citations omitted). "The purpose of the doctrine is to protect the integrity of the judicial process by preventing parties from playing fast and loose with the courts to suit the exigencies of self interest." *Id.* (quoting *In re Superior Crewboats, Inc.*, 374 F.3d 330, 334 (5th Cir. 2004)) (additional citations omitted). In order for judicial estoppel to operate, three particular requirements must be met: "(1) the party is judicial estopped only if its position is clearly

inconsistent with the previous one; (2) the court must have accepted the previous position; and (3) the non-disclosure must not have been inadvertent." *Id.* at 385-86 (quoting *Superior Crewboats*, 374 F.3d at 335). Importantly, "[b]ecause the rule is intended to prevent improper use of judicial machinery, judicial estoppel is an equitable doctrine invoked by a court at its discretion[.]" *New Hampshire v. Maine*, 532 U.S. 742, 750, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001) (citations omitted); see also *Admiral Ins. Co., Inc. v. Arrowood Indem. Co.*, 471 B.R. 687, 708 (N.D. Tex. 2012) (citing *Hall v. GE Plastic Pac. PTE, Ltd.*, 327 F.3d 391, 396 (5th Cir. 2003)) ("Judicial estoppel is an equitable doctrine, and the decision whether to invoke it is within the court's discretion.").

As an initial point, the Court is not persuaded that the content of the Notice of Criminal Disposition is inconsistent with Webster County's position in this case. Robinson has not emphasized, and the Court has not located, any language in the Notice of Criminal Disposition wherein Webster County specifically represented that no furloughs were granted during Patterson's period of incarceration. Rather, the Notice of Criminal Disposition simply lists dates of confinement. This particular section of the Notice of Criminal Disposition contains no warranty that the period of confinement was continuous, and the Court finds no reason to imply that such a representation was made by Webster County. Therefore, the fact that Patterson was granted a furlough during the period of his confinement does not necessarily render Webster County's position in this case inconsistent with the Notice of Criminal Disposition filed in the criminal case. Thus, the Court finds that Robinson has not established that the first element of judicial estoppel.

The Court also notes that the application of the judicial estoppel doctrine on these facts would not achieve equity. The content of the Notice of Criminal Disposition does not affect the amount of control which Webster County maintained over Patterson at the time of the subject

incident. In other words, whether Webster County possessed any control whatsoever over Patterson on the night in question is completely unaffected by the content of the Notice of Criminal Disposition. It is undisputed that Patterson was in Webster County's custody prior to the night in question, that he was released from custody for a period of time which included the night in question, and that he later returned to custody. The actual control, or lack thereof, that Webster County exercised over Patterson, rather than the content of a Notice of Criminal Disposition in a state court proceeding, should govern the issue of liability in this case. *See U.S. ex rel. Long v. GSDMIdea City, L.L.C.*, 798 F.3d 235, 272 (5th Cir. 2015) (emphasizing district courts' discretion as to whether to apply judicial estoppel); Reed v. City of Arlington, 650 F.3d 571, 574 (5th Cir. 2011) (additional citation omitted) ("[D]ifferent considerations may inform [judicial estoppel's] application in specific factual contexts."). Robinson's attempt to utilize the content of the Notice of Criminal Disposition in the present manner constitutes an effort to obtain an unfair result through a technicality. *See Pegg v. Steel Dynamics, Inc.*, 2018 WL 1247874, *4 (N.D. Miss. Mar. 9, 2018) (declining to apply judicial estoppel when defendant's argument was "insufficient to establish that the Plaintiff intended to obtain an unfair advantage, or to take advantage of the judicial system."); *King v. Cole's Poultry, LLC*, 2016 WL 7191701, *5 (N.D. Miss. Dec. 12, 2016) (refusing to apply judicial estoppel on the basis that party "appear[ed] to be attempting to utilize the equitable doctrine of judicial estoppel to escape liability in an inequitable manner."); *Sherman v. Wal-Mart Associates, Inc.*, 550 B.R. 105, 110 (N.D. Tex. Apr. 25, 2016) ("Finding no threat to the integrity of the judicial system, the Court declines to apply judicial estoppel in this case.").

Ultimately, as noted above, the purpose of the judicial estoppel doctrine is to protect the integrity of the court judicial process by preventing parties from obtaining an unfair advantage by taking inconsistent positions in litigation. *Kane*, 535 F.3d at 385. The integrity of the judicial

process will not be undermined by the Court's refusal to apply judicial estoppel on these facts. In fact, the Court's refusal to apply the doctrine under these circumstances will achieve fairness and will allow the liability analysis to be determined by the underlying facts, rather than a procedural technicality. The Court declines to apply judicial estoppel, and Robinson's Motion to Strike [31] is therefore denied.

## *II. Motions for Judgment on the Pleadings*

Rule 12(c) of the Federal Rules of Civil Procedure authorizes a party to move for judgment on the pleadings. FED. R. CIV. P. 12(c). "A Rule 12(c) motion may dispose of a case when there are no disputed material facts and the court can render a judgment on the merits based on the substance of the pleadings and any judicially noted facts." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 734 (5th Cir. 2019).

"A motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure is subject to the same standard as a Rule 12(b)(6) motion to dismiss." *Salts v. Moore*, 107 F.Supp.2d 732, 735 (N.D. Miss. 2000). Accordingly, "[t]he central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief." *In re Katrina Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (citations omitted). Stated differently, "the issue is not whether the plaintiff will ultimately prevail, but whether it is entitled to offer evidence to support its claims." *Oceanic Exploration Co. v. Phillips Petroleum Co. ZOC*, 352 F. App'x 945, 950 (5th Cir. 2009) (citing *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007)). The Court will "accept well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff, but . . . [will] not accept as true 'conclusory allegations, unwarranted factual inferences, or legal conclusions.'" *Id.* (citing *Ferrer*, 484 F.3d at 780).

*A. Motions for Dismissal of Improper Defendants [18, 20]*

Through two separate Motions for Judgment on the Pleadings [18, 20], the Defendants jointly contend that the Court should dismiss all official capacity claims against Sheriff Mitchell and Dispatcher Townsend and further contend that the Court should dismiss each of Robinson's claims against the Webster County Sheriff's Department. Robinson did not respond to either of these motions.

Unlike suits against officers in their personal capacities, suits brought against officers in the official capacities "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. N.Y.C. Dep't of Social Svcs*, 436 U.S. 658, 690 n. 55, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Estate of Manus v. Webster Cty., Miss.*, 2014 WL 1285946, at *2 (N.D. Miss. Mar. 31, 2014) (reversed in part on other grounds) (quoting Kentucy v. Graham, 473 U.S. 159, 166, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985)). Therefore, "the dismissal of allegations against municipal officers in their official capacities is proper when the allegations duplicate claims against the governmental entity itself." *Id*. (citing *Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001)).

Because Robinson makes no distinction between her claims against Sheriff Mitchell and Dispatcher Townsend and her claims against Webster County, her claims as to Sheriff Mitchell and Dispatcher Townsend in their respective official capacities are duplicative of her claims against Webster County. For these reasons, Robinson's official capacity claims against Sheriff Mitchell and Dispatcher Townsend are dismissed.

The Defendants also contend that Webster County Sheriff's Department is not a separate legal entity subject to suit, warranting dismissal of all claims against it. The Defendants aver that, rather that the Sheriff's Department, Webster County is the appropriate defendant as to all claims related to the conduct of the Webster County Sheriff's Department or any of its officials because the Sheriff's Department is an extension of the County itself pursuant to well-settled Mississippi law.

The capacity of a Sheriff's Department to be sued is governed by state law. Fed. R. Civ. P. 17(b)(3). Although the Mississippi Code authorizes suit against "[e]very municipality of this state[,]" it does not authorize suit against a municipality's police or sheriff's department. Miss. Code Ann. § 21-17-1(1); *Jackson v. City of Gulfport*, 2017 WL 651956, *2 (S.D. Miss. Feb. 16, 2017). In other words, "a [sheriff's] department is not a separate legal entity that may be sued. Rather, it is an extension of the city." *Id.*; *see also Brown v. Thompson*, 927 So.2d 733, 737 (Miss. 2006) (holding that a sheriff's department does not enjoy a separate legal existence apart from the county in which it operates and is therefore not subject to suit); *Stovall v. City of Hattiesburg*, 2010 WL 1908313, at *1-2 (S.D. Miss. May 17, 2010) (dismissing the Hattiesburg Police Department as a defendant because the City of Hattiesburg was the appropriate defendant).

In accordance with this well-settled authority, the Court finds that Webster County Sheriff's Department lacks the capacity to be sued. Webster County, not the Webster County Sheriff's Department, is the proper entity against which Robinson's claims should be made. The Webster County Sheriff's Department is not a proper defendant in this action and is therefore dismissed.

*B. Webster County and Tim Mitchell's Motions for Judgment on the Pleadings [22, 35]*

In its separate Motion for Judgment on the Pleadings [22], Webster County seeks judgment in its favor on all Section 1983 claims asserted against it. Sheriff Mitchell also filed his own Motion [35], arguing that all claims asserted against him in his individual capacity should be dismissed pursuant to the qualified immunity doctrine. As discussed below, the same issue is dispositive as to both of these motions, so the Court will address them jointly.

*a. Section 1983 Claims*

"Regarding Section 1983, the United States Supreme Court has held that the statute's 'very purpose . . . was to interpose the federal courts between the States and the people, as guardians of the people's federal rights—to protect the people from unconstitutional action *under color of state law.*'" *Alexander v. McAdams*, 2017 WL 5642328, *3 (N.D. Miss. Apr. 18, 2017) (quoting *Mitchum v. Foster*, 407 U.S. 225, 242, 92 S.Ct. 2151, L.Ed.2d 705 (1972)) (emphasis in original). In order to state a claim under Section 1983, a plaintiff must "(1) allege he has been deprived of a right secured by the United States Constitution or the laws of the United States; and (2) demonstrate that the alleged violation was committed by a person acting under color of state law." *Weeks v. Thompson*, 2007 WL 316261, *2 (N.D. Miss. Jan. 31, 2007) (citing *Cornish v. Correctional Services Corp.*, 402 F.3d 545, 549 (5th Cir. 2005)).

Undoubtedly, different standards are applicable to a Section 1983 claim against a municipality and an individual capacity claim against a law enforcement officer. *See Weeks*, 2007 WL 316261, at *2 ("Municipal liability under section 1983 requires proof of (1) a policymaker, (2) an official policy, and (3) a violation of constitutional rights whose 'moving force' is the policy or custom."); *Mangieri v. Clifton*, 29 F.3d 1012 (5th Cir. 1994) (holding that law enforcement officers are entitled to qualified immunity "unless it is shown that, at the time of the incident, [the

officer] violated a clearly established constitutional right."). Nevertheless, whether seeking to impose liability against a municipality or an individual officer, a Section 1983 plaintiff must first allege that she has been deprived of a right secured by the United States Constitution or federal law. *Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004) (holding that in order to establish a Section 1983 claim, there must be "a deprivation of a right secured by federal law[.]"). If the plaintiff has not been deprived of a federal constitutional or statutory right, there can be no viable Section 1983 claim. *Id.* In their separate Motions, both Webster County and Sheriff Mitchell assert that Robinson has not properly stated a Section 1983 claim because she has not alleged a deprivation of a right secured by the United States Constitution or federal law.

As set forth above, Robinson's Complaint sets forth Section 1983 claims related to purported violations of her Fourteenth, Fourth, and Eighth Amendment rights. The Court will address each of these allegations in turn.

### i. Fourteenth Amendment Claims

The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Concerning the scope of the clause, "[t]here can be no dispute that the Fourteenth Amendment includes as a liberty interest 'a right to be free from . . . unjustified intrusions on personal security.'" *Bright for Doe v. Tunica Cty. Sch. Dist.*, 2017 WL 3996409, *5 (N.D. Miss. Sept. 11, 2017) (quoting *Ingraham v. Wright*, 430 U.S. 651, 673, 97 S. Ct. 1401, 51 L. Ed. 2d 711 (1977)).

Although the Due Process Clause provides a general protection from unjustified intrusions on personal security, "a state official has no constitutional duty to protect an individual from private violence." *McClendon v. City of Columbia*, 305 F.3d 315, 324 (5th Cir. 2002) (citing

*DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 197, 109 S. Ct. 998, 103 L. Ed. 2d 249 (1989)). Stated differently, "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003) (citing *DeShaney*, 489 U.S. at 197). Nevertheless, "some courts have allowed two possible exceptions to that general rule . . .: (1) when the state has a 'special relationship' with the citizen, such as when the state takes the person into custody or otherwise limits the person's freedom to act on his or her own behalf; and (2) when the state has created the danger that led to the person's injury[.]" *Id*. at *28-29 (citing *DeShaney*., 489 U.S. at 195-96, 109 S. Ct. 998) (additional citations omitted).

Robinson first contends the general prohibition of Section 1983 liability based upon private violence is altogether inapplicable because, even though he was an inmate, Patterson was a state actor at the time of the incident. In other words, she alleges that her injuries were not caused by private violence. In support of this theory, Robinson contends that "Patterson operated as a 'willful participant in joint activity with the State or its agents' (1) when he left the Webster County Jail with the express permission of Sheriff Mitchell, who had actual knowledge of his penchant for harming Mrs. Robinson and (2) by virtue of him serving as a trusty, which made him a quasi-employee of the County."

Other district courts in the Fifth Circuit have declined to deem a party a state actor for Section 1983 purposes simply due to an unrelated relationship with the state. *See*, e.g., *Allard v. Quinlan Pest Control Co. Inc.*, 2011 WL 5025149, *5 (N.D. Tex. Sept. 14, 2011) ("District courts in this circuit have . . . held that a private, independent contractor does not become a state actor by virtue of being hired by the state."); *Hatton v. Henderson Cty. Jail*, 2009 WL 2744896, slip op., *6 (E.D. Tex. Aug. 24, 2009) (holding that a construction company hired by a county jail which

employed an inmate as a trusty was not a state actor); *Plummer v. Valdez*, 2006 WL 2713784, slip op., *2 (N.D. Tex. Sept. 21, 2006) (holding that a private company providing products for sale to inmates was not a state actor). Robinson cites no authority in support of her position that an individual becomes a state actor merely because of an unrelated relationship with the state, and the Court sees no reason to effectively expand the definition of a state actor for Section 1983 purposes under these particular circumstances. [4]

Further supporting this finding, the Fifth Circuit has previously found the general rule prohibiting the imposition of liability due to private violence applicable under similar facts. *See McClendon*, 305 F.3d at 324. In *McClendon*, a City of Columbia police detective, after learning that an altercation was likely to ensue between the confidential informant and one of his targeted suspects, loaned a gun to a confidential informant so that the informant could protect himself. *Id*. at 319. After the confidential informant shot and injured the targeted suspect using the gun provided to him by the detective, the suspect filed suit against, among others, the City of Columbia. *Id*. The Fifth Circuit ultimately affirmed the district court's ruling that the underlying facts did not give rise to a constitutional violation because, even though he utilized a state-provided weapon, the confidential informant was a private actor for Section 1983 purposes at the time he inflicted the injury. *Id*. at 324.[5]

The Court finds *McClendon* persuasive on this issue. In *McClendon*, the confidential informant was arguably acting in furtherance of an objective of the State when he was involved in the altercation giving rise to the purported constitutional violation as he was seeking to obtain

---

[4]   This contention is more appropriately categorized as an argument in support of the state-created danger theory, which the Court will address at length below.

[5]   Other authorities also support this finding.  *See*, e.g., *O'Meara v. Pearl River Cty. Jail*, 2009 WL 801728, *1 (S.D. Miss. Mar. 25, 2009) (holding that an inmate who committed assault while in custody remained a private citizen for Section 1983 purposes).

information for utilization by the State. The Fifth Circuit nevertheless deemed him a private actor for Section 1983 purposes. Here, Patterson was undoubtedly not acting to further any purpose of the State at the time he inflicted the injuries upon Robinson. Other than the fact that he was on furlough, Patterson had no connection to Webster County whatsoever. Though he had been named a trusty at the Webster County Jail, Robinson's Complaint makes no allegation that Patterson was acting in furtherance of any duties related to that position at the relevant time. Thus, even taking all of Robinson's allegations as true, the Court finds that Patterson was acting in his private capacity at the time of the subject incident and, therefore, that Robinson was subjected to private violence.

Because Robinson was subjected to private violence, the Fourteenth Amendment provides her with no protection unless she establishes that an exception to the general rule is applicable. *Rivera*, 349 F.3d at 247. Robinson argues in favor of both the "special relationship" exception and the state-created danger exception.

Regarding the "special relationship" exception, the Supreme Court has held that "in certain limited circumstances the Constitution imposes upon the State affirmative duties of care and protection with respect to particular individuals." *DeShaney*, 489 U.S. at 198. "When the state, through the affirmative exercise of its powers, acts to restrain an individual's freedom to act on his own behalf 'through incarceration, institutionalization, or other similar restraint of personal liberty,' the state creates a 'special relationship' between the individual and the state which imposes upon the state a constitutional duty to protect that individual from dangers, including, in certain circumstances, private violence." *McClendon*, 305 F.3d at 324 (citing *DeShaney*, 498 U.S. at 200). The Fifth Circuit has consistently expressed the narrow scope of the "special relationship" exception, having only previously extended it to circumstances where the state has incarcerated a

prisoner, involuntarily committed an individual to an institution, or placed a child in foster care. *Doe v. Covington Cty. Sch. Dist.*, 675 F.3d 849, 855-56 (5th Cir. 2012) (quoting *DeShaney*, 489 U.S. at 199-200, 109 S. Ct. 998). The purpose of the exception is to place a duty upon the State when it has imposed a limitation upon an "individual's freedom to act on his own behalf." *Id*. at 856.

Arguing in favor of the applicability of the "special relationship" exception, Robinson avers that "the County, acting in deference to the interests of their inmate/trusty (*i.e.*, Patterson), effectively took Mrs. Robinson's liberty under terms that provided no realistic means of escape while giving her no means of providing for her own care or safety." Despite this assertion, Robinson's Complaint makes no claim that Webster County acted in any way to restrict her liberty or freedom to act on her own behalf. Although Robinson alleges that Dispatcher Townsend acted negligently by failing to dispatch a deputy to her home following her call to Robinson, Dispatcher Townsend's failure to do so did not create a "special relationship" between Robinson and the County. In fact, the Fifth Circuit has previously declined to extend the "special relationship" exception when a city employee failed to dispatch law enforcement to a particular location after receiving a request to do so. *Beltran v. City of El Paso*, 367 F.3d 299, 302 (5th Cir. 2004) (refusing to recognize a "special relationship" where a 911 operator received a call from a domestic abuse victim and stated that the police would be sent to the victim's residence but never actually did so). Thus, regardless of whether Dispatcher Townsend acted improperly by failing to dispatch law enforcement to Robinson's home, her failure to do so did not create a "special relationship" between Webster County and Robinson.

Taking each of Robinson's allegations as true, Webster County did not impose any restriction on Robinson's ability to act on her own behalf. Although Patterson, a private individual,

was purportedly in an enraged state at her residence, Robinson maintained liberty to flee or take other steps to protect herself. In light of these facts, along with the "special relationship" exception's narrow applicability, the Court declines to apply it in this context.

Robinson also argues in favor of the state-created danger theory. The state-created danger theory derives from the following language of the Supreme Court's opinion in *DeShaney*:

> While the State may have been aware of the dangers that Joshua faced in the free world, it played no part in their creation, nor did it do anything to render him any more vulnerable to them. That the State once took temporary custody of Joshua does not alter the analysis, for which it returned him to his father's custody, it placed him in no worse position than that in which he would have been had in not acted at all . . .

*DeShaney*, 489 U.S. at 201. Courts have relied upon this language for the proposition that "a state actor may be liable under § 1983 if the state actor created or knew of a dangerous situation and affirmatively placed the plaintiff in that situation." *Bright*, 2017 WL 3996409, at *7 (quoting *Covington Cty. Sch. Dist.*, 675 F.3d at 864); *see also Cook v. Hopkins*, 2019 WL 5866683, *5 (5th Cir. Nov. 8, 2019) (citing *Bustos v. Martini Club Inc.*, 599 F.3d 458, 466 (5th Cir. 2010)) (noting that, pursuant to the state-created danger theory, the state is liable "if it created or exacerbated the danger of private violence against an individual.").

This Court has recently noted the extensive number of circuits across the country that have recognized the state-created danger theory as a basis for a due process claim. *Id*. at *7, n. 5 (citations omitted)) ("Since *DeShaney*, the Second, Third, Fourth, Sixth, Seventh, Eighth, Ninth, Tenth, and D.C. Circuits have recognized the existence of the state-created danger theory."). However, while the Fifth Circuit has previously outlined the applicable test for the state-created danger theory, it has never adopted the theory. *Morin v. Moore*, 309 F.3d 316, 321-22 (5th Cir. 2002) ("In order to recover under the state-created danger theory, we assume that a plaintiff would

have to show, at a minimum, that: (1) the state actors created or increased the danger to the plaintiff and (2) the state actors acted with deliberate indifference."). The Fifth Circuit has actually declined to adopt the state-created danger theory on multiple occasions. *See*, *e.g, Keller v. Fleming*, --- F.3d ---, 2020 WL 831757, at \*7 (5th Cir. Feb. 20, 2020) ("[T]he Fifth Circuit has never recognized [the] 'state-created-danger' exception."); *Doe v. Columbia-Brazoria Indep. Sch. Dist.*, 855 F.3d 681, 688 (5th Cir. 2017) ("Panels [in this circuit] have repeatedly noted the unavailability of the [state-created danger] theory."). Thus, although the state-created danger theory is recognized by most circuits across the country, it has never been recognized as a viable theory for recovery in the Fifth Circuit.

Robinson acknowledges that the state-created danger theory is not viable in the Fifth Circuit but urges the Court to apply the theory, asserting that the underlying facts "should be persuasive enough for the Court of Appeals to adopt this cause of action." The Court notes that the facts alleged by Robinson, including both Sheriff Mitchell's alleged knowledge as to Patterson's violent propensity prior to granting furlough to Patterson and Dispatcher Townsend's failure to dispatch law enforcement to Robinson's home and the failure to train aspect associated therewith, appear to fall squarely within the parameters of the state-created danger theory. Taking Robinson's allegations as true, the conduct of Sheriff Mitchell and/or Dispatcher Townsend arguably created or at least exacerbated the potential for private violence. Nevertheless, while the Court is certainly sympathetic to Robinson's position, as the allegations of her Complaint would likely be enough to survive judgment on the pleadings on the state-created danger theory, this Court is duty bound to follow Fifth Circuit precedent. *See*, e.g., *Miss. ex rel. Hood v. Entergy Miss., Inc.*, 2012 WL 3704935, \*7 n. 6 (S.D. Miss. Aug. 25, 2012) ("This court is duty bound . . . to follow Fifth Circuit precedent as it is written[.]"). Therefore, regardless of this Court's view on whether the state-

created danger theory should be adopted, it must follow Fifth Circuit precedent. Accordingly, the Court declines to apply the state-created danger theory in this case.

Ultimately, "[t]o state a Fourteenth Amendment due process claim under Section 1983, 'a plaintiff must first identify a protected life, liberty or property interest and then prove that governmental action resulted in a deprivation of that interest.'" *Little v. Miss. Dep't of Pub. Safety Bureau of Narcotics*, 2017 WL 2999141, *9 (N.D. Miss. July 13, 2017) (quoting *Baldwin v. Daniels*, 250 F.3d 943, 946 (5th Cir. 2001)). Because Robinson has not pled a protected life, liberty, or property interest of which she has been deprived, she has not alleged a violation of her Fourteenth Amendment due process rights. Her Section 1983 claims related to a purported Fourteenth Amendment fail as a matter of law.

*ii. Fourth Amendment Claims*

Robinson also asserts Section 1983 claims based upon Fourth Amendment violations, contending that her Fourth Amendment rights were violated when Robinson attempted to seize her person, attempted to prohibit her from leaving her own home, and abused her. "The Fourth Amendment provides that '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . .' The Amendment guarantees the privacy, dignity, and security of persons against certain arbitrary and invasive acts by officers of the Government or those acting at their direction." *Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 613-14, 109 S. Ct. 1402, 103 L. Ed. 2d 639 (1989) (citing *Camara v. Municipal Court of San Francisco*, 387 U.S. 523, 528, 87 S. Ct. 1727, 18 L. Ed. 2d 930 (1967)) (additional citations omitted). "Although the Fourth Amendment does not apply to a search or seizure, even an arbitrary one, effected by a private party on his own initiative, the Amendment

protects against such intrusions if the private party acted as an instrument or agent of the Government." *Id*. at 614 (citations omitted).

Like her Fourteenth Amendment claims, Robinson's Fourth Amendment claims fail as a matter of law because, as the Court finds above, the injuries which were inflicted upon her were inflicted by a private party. Other than a generalized statement that Patterson was "at all material times controlled by an agency of the State[,]" Robinson has not alleged that Patterson was acting as an instrument or agent of Webster County. As set forth above, the Court finds the fact that Patterson was appointed as a trusty by Sheriff Mitchell irrelevant to the analysis, as Patterson was not acting in his furtherance of his duties as a trusty when he was released on furlough. Therefore, regardless of the conduct in which Patterson engaged, a Fourth Amendment search or seizure did not occur, and she cannot survive the present Motions as to her Fourth Amendment claims.

Ultimately, in order to survive a motion for judgment on the pleadings as to a Section 1983 claim, a plaintiff must allege a deprivation of a right secured by the Constitution or by federal law. *Baker v. McCollan*, 443 U.S. 137, 140, 99 S. Ct. 2689, 61 L. Ed. 2d 433 (1979) ("The first inquiry in any § 1983 suit . . . is whether the plaintiff has been deprived of a right secured by the Constitution and the laws."). Because Robinson has not pled a deprivation of a federal constitutional or statutory right, her Section 1983 claims fail as a matter of law and are therefore dismissed.

### iii. Eighth Amendment Claims

In addition to her Fourteenth and Fourth Amendment claims, Robinson's Complaint also asserts Section 1983 claims based upon purported Eighth Amendment violations, specifically on the basis that "as a state actor, Patterson had the duty to refrain from beating Mrs. Robinson senseless and dousing her nearly naked body with sulfuric acid." In its Motion, Webster County

also seeks dismissal of Robinson's Eighth Amendment claims. In her Response, Robinson does not address Webster County's argument and appears to abandon her Eighth Amendment claims altogether. Because the Eighth Amendment provides protection to an individual only after a conviction and since she was never convicted of any crime, Robinson's Eighth Amendment claims also fail as a matter of law. *See*, e.g., *Gonzalez-Rivera v. Mota*, 2008 WL 11411970, *5 n.1 (W.D. Tex. Aug. 14, 2008) (citing *Carlton v. Fearneyhough*, 2008 WL 686595, *2 (5th Cir. 2008)) ("The Eighth Amendment applies only to persons convicted of crimes and is inapplicable to plaintiff's excessive force claim."). Robinson's Section 1983 claims based upon the Eighth Amendment are therefore dismissed.

### b. State Law Claims

Webster County also requests that the Court decline to exercise supplemental jurisdiction over Robinson's myriad of state law claims. Pursuant to 28 U.S.C. § 1367(c), district courts may decline to exercise supplemental jurisdiction over a claim if "(1) the claim raises a novel or complex issue of state law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." *Seals v. Mississippi*, 998 F.Supp.2d 509, 526-27 (N.D. Miss. 2014). In making its determination as to whether to exercise supplemental jurisdiction, "the court is guided by the . . . statutory factors as well as the common law factors of judicial economy, convenience, fairness, and comity." *Id*. at 527 (citing *Mendoza v. Murphy*, 532 F.3d 342, 346 (5th Cir. 2008)). In the Fifth Circuit, "the general rule is that a court should decline to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial[.]" *Id*. (quoting *Brookshire Bros. Holding, Inc. v. Dayco Prod. Inc.*, 554 F.3d 595, 602 (5th

Cir. 2009)); *see also Sahlein v. Red Oak Capital, Inc.*, 2015 WL 736340, *2 (N.D. Miss. Feb. 20, 2015) (citations omitted) ("[T]he Fifth Circuit has stated that its general rule is to decline to exercise jurisdiction over pendent state-law claims when all federal claims are dismissed or otherwise eliminated from a case prior to trial.").

Having determined that Robinson's federal claims fail as a matter of law, the Court, in accordance with the general rule in the Fifth Circuit, declines to exercise supplemental jurisdiction over the pending state law claims. The only federal claims not dismissed as a result of this Order are the claims asserted against Patterson, for which default has been entered due to his failure to file a responsive pleading. Thus, all federal claims have been eliminated either via adverse judgment through this Order or through the entry of a procedural default, and the Fifth Circuit's general rule therefore supports declining to exercise supplemental jurisdiction.

The Court's decision to decline to exercise supplemental jurisdiction is particularly warranted in this case, in light of the fact that this action was only recently instituted and no discovery has yet been conducted by the parties. The parties therefore will not suffer any real harm as a result of the dismissal of the state law claims *without prejudice*. The Court will not exercise jurisdiction over Robinson's state law claims.[6]

---

[6] The Court notes that Robinson filed a Motion for Judgment on the Pleadings as to Dispatcher Townsend's counterclaim for defamation of character [26]. Because the counterclaim is a state law claim and in light of the Court's foregoing decision to decline to exercise supplemental jurisdiction, the Motion will be dismissed *without prejudice*.

*Conclusion*

For the reasons set forth in detail above, Robinson's Motion for Hearing [50] and Motion to Strike [31] are DENIED. The Defendants' Motions for Judgment on the Pleadings concerning improper parties [18, 20] are GRANTED. All official capacity claims against Sheriff Mitchell and Dispatcher Townsend, as well as all claims against the Webster County Sheriff's Department, are dismissed *with prejudice*. Webster County and Sheriff Mitchell's Motions for Judgment on the Pleadings [22, 35] are GRANTED as to all federal claims asserted by Robinson. All federal claims asserted by Robinson against Webster County, Sheriff Mitchell, and/or Dispatcher Townsend are dismissed *with prejudice*. The Court declines to exercise supplemental jurisdiction over all state law claims asserted by Robinson, and those claims are therefore dismissed *without prejudice*. Robinson's Motion for Judgment on the Pleadings as to Dispatcher Townsend's Counterclaim [26] is dismissed *without prejudice*. The Court retains jurisdiction solely as to Robinson's claims against Patterson for which default has been entered.

SO ORDERED, this the 11th day of March, 2020.

/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE