IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

FELICIA ROBINSON                                                                               PLAINTIFF

V.                                      CIVIL ACTION NO. 1:19-CV-121-SA-DAS

DAREN PATTERSON                                                    DEFENDANT

ORDER AND JUDGMENT

On September 29, 2021, the Court entered an Order and Default Judgment [60] in favor of Felicia Robinson against Daren Patterson. The Order and Default Judgment [60] did not award a specific damages amount but, rather, only established liability. On February 15, 2022, the Court, consistent with Federal Rule of Civil Procedure 55(b), held a hearing on damages, during which the Court heard Robinson's testimony and accepted into evidence various documents supporting her damages claim.

*Relevant Background*

The facts of this case are brutal. At all pertinent times, Robinson and Patterson were (and they remain) married. The Complaint [1] alleges that Webster County Sheriff Mitchell granted Patterson, an inmate of the Webster County Jail, a "weekend jail pass" on September 1, 2018. During that weekend, Patterson was involved in an altercation with Robinson at a pool hall in Eupora, Mississippi. Although Sheriff Mitchell was aware of this incident, he later granted Patterson another "weekend pass" for the weekend of November 2, 2018. In its Order and Memorandum Opinion [54], the Court summarized the events of that weekend as follows:

> Sheriff Mitchell again granted Patterson a "weekend pass" on the weekend of November 2, 2018. Robinson contends that, during the November 2, 2018 weekend pass, Patterson subjected her to "malicious and sadistic" abuse. Specifically, Robinson alleges that on the afternoon of November 2, 2018, Patterson threw a beer can at her, punched her in the face, and threated to burn down her home.

> Later that evening, Patterson allegedly punched a hole in the wall of Robinson's home and subjected her to verbal and physical abuse, causing Robinson to fear for her life. At approximately 9:23 p.m. that night, Robinson made a call to Dispatcher Santana Townsend, who was a dispatcher with Webster County at the time, seeking law enforcement assistance. Robinson purportedly placed the call to Dispatcher Townsend's cell phone, rather than the general phone number for the Webster County Sheriff's Department, because she had a personal relationship with Dispatcher Townsend. Dispatcher Townsend did not dispatch law enforcement to Robinson's residence but instead placed another trusty on the phone to speak to Patterson to calm him down. Patterson became even more agitated following the phone conversation and never left Robinson's residence. Law enforcement was never dispatched to Robinson's home.
>
> At approximately 12:30 a.m. the following morning, Patterson, while still in an enraged state, purportedly threw Robinson on the bathroom floor, punched her repeatedly, and poured "Liquid Fire" on her in an apparent attempt to burn her alive. After a struggle, Robinson eventually escaped from Patterson and tried to travel to the hospital to seek treatment for her injuries, which included significant burns. She was unable to leave the residence without Patterson, and she traveled to the hospital with Patterson in the passenger seat of her vehicle. When Robinson and Patterson arrived at the hospital in the early morning hours of November 3, 2018, Robinson received extensive medical treatment for her injuries and was later transferred to a burn treatment center in Brandon, Mississippi. Patterson eventually returned to the Webster County Jail and was released from custody sometime later.

[54] at p. 2-3.

In her Complaint [1], Robinson named numerous parties as Defendants, including Webster County, Sheriff Mitchell, Townsend, and Patterson. In an Order and Memorandum Opinion [54] entered on March 11, 2020, the Court dismissed the federal claims against Webster County, the Sheriff's Department, Mitchell, and Townsend and declined to exercise supplemental jurisdiction over the state law claims asserted against those Defendants. In reaching this conclusion, the Court noted that the state created danger theory has not been recognized by the Fifth Circuit. *Id*. On

2

appeal, the Fifth Circuit affirmed this Court's ruling in all respects. *See* [56]. Therefore, Patterson is the only remaining Defendant in this case.

Particularly as to Patterson, Robinson's Complaint [1] asserts claims pursuant to Section 1983 for violations of the Fourth, Eighth, and Fourteenth Amendments, in addition to state law claims for assault and battery, false imprisonment, and intentional infliction of emotional distress.

*Testimony/Evidence from Rule 55(b) Hearing*

Robinson's testimony at the hearing was consistent with the allegations of her Complaint [1]. She first testified regarding the September 1, 2018 weekend. Robinson and Patterson went to the local pool hall. While there, Patterson accused Robinson of stealing money from him, and he hit her in the head. He then attempted to run over her with a vehicle but, ultimately, she moved out of the way and he hit a mailbox. Robinson was able to escape, and she hid from him until his weekend pass ended and he went back to jail.

Things got worse on the weekend of November 2, 2018. That weekend, Robinson and Patterson went back to the pool hall after Patterson purchased a half pint of gin and three beers. She testified that Patterson got drunk, began cussing at her, and started hitting her over and over. They eventually went home, and he became even more enraged toward her. Eventually, he followed her into the bathroom. After punching a hole in the wall, he threw her on the ground and poured liquid fire drain cleaner (pure sulfuric acid) on her naked body. She testified that she immediately experienced significant pain and ran to a neighbor's house to try to get them to take her to the hospital, but the neighbors refused. She was able to get into her vehicle and drive herself to the hospital.

After arriving at the hospital, Robinson was airlifted to a burn treatment center near Jackson, Mississippi due to the severity of her injuries. She stayed in the hospital for approximately

3

two and a half to three weeks. She has undergone twelve surgeries (including skin grafts), and she has burns all over her body. Robinson explained that she experienced severe pain for days after each of these surgeries and received shots to alleviate some of the pain. She also testified that she has been prescribed medication for nightmares and suffers from low self-esteem due to the scarring all over her body. She sees a psychiatrist one or two times per month.

Prior to the assault, Robinson was receiving disability benefits, but she was also able to work some odd jobs washing cars or cleaning out rental houses. She testified that she is now unable to do those odd jobs as frequently as she was previously able to. She also explained that she experiences pain in her knee if she overuses it.

At the hearing, the Court admitted into evidence a photograph showing the significant burns Robinson suffered. The Court also admitted into evidence a beneficiary conditional payment letter from the Centers for Medicare and Medicaid Services. The letter, which only covers treatment received through March 28, 2019, lists the following totals:

> Sum of Total Charges: $878,956.61
> Total Reimbursed Amount: $134,837.22
> Total Conditional Payments: $133,588.38

*See* [67], Ex. 2.

Robinson testified that she is still receiving medical treatment for her injuries, thus the charges are certainly much greater than the amounts listed in the letter. She requests compensatory and punitive damages.

*Analysis and Discussion*

"Following a default judgment, a plaintiff bears the burden of proving [her] damages." *Yeager v. Brand*, 2018 WL 4689467, at *2 (N.D. Miss. Sept. 28, 2018) (citations omitted).

"The basic principle of compensatory damages is that the injured party should be made whole by being compensated fully for any losses [she] has sustained." *Jimenez v. Paw-Paw's Camper City, Inc.*, 2002 WL 257691 at *10 (E.D. La. Feb. 22, 2002) (quoting *Wilkerson v. Ingalls Shipbldg., Inc.*, 125 F.3d 904, 907 (5th Cir. 1997)). "[T]he elements of damages allowable in comparable common law tort actions for physical injury guide the determination of compensatory damages, which can include, among other things, damages for loss of earnings, pain and suffering, past and future medical expenses, and mental and emotional distress." *Johnson v. Williams*, 2018 WL 7324851 at *4 (N.D. Miss. Aug. 31, 2018) (citing *Carey v. Piphus*, 435 U.S. 247, 254, 98 S. Ct. 1042, 55 L. Ed. 2d 252 (1978); *Cowart v. Erwin*, 837 F.3d 444, 455 (5th Cir. 2016)).

The Court first looks to loss of earnings. Robinson testified that she was receiving disability benefits prior to the subject assault and that she worked odd jobs sporadically. Since the assault, she continues to receive disability benefits but testified that she is not able to perform the odd jobs as frequently. The Court recognizes that she need not prove her damages with mathematical precision. *See, e.g.*, *Salinas v. Roadway Exp., Inc.*, 735 F.2d 1574, 1578 (5th Cir. 1984). However, without more, the Court simply does not feel adequately positioned to place any monetary figure on loss of earnings.

Medical expenses are also difficult to account for in this case. As noted above, Robinson testified that she is a Medicare/Medicaid recipient and has not personally paid any medical expenses. However, the Court is also aware that Medicare/Medicaid has made some conditional payments and may have an interest to an offset for any damages she receives in this case. But the Court does not have the benefit of a final monetary lien amount. This, of course, is a complicating factor in a compensatory damages award.

The bulk of compensatory damages to which Robinson is entitled relates to pain and suffering and mental and emotional distress. Robinson explained in great detail the pain she suffered as a result of the twelve surgeries she has undergone. This is, of course, in addition to the pain she suffered during the assault itself. She also explained the mental and emotional pain she has suffered due to her husband pouring liquid fire on her—an event which would undoubtedly have a negative effect on any person. She has permanent scarring on her body, which she expressed has caused her to suffer from low self-esteem. The photograph admitted into evidence illustrates the burns she suffered—they were severe. Candidly, it is difficult for the Court to put into words the pain and suffering and mental and emotional distress which Robinson has suffered due to the assault.

The Court found Robinson's testimony to be credible and finds that she is entitled to an award of compensatory damages. The Court hereby awards compensatory damages in Robinson's favor against Patterson in the amount of $250,000.00.

Robinson also requests punitive damages. This Court recently imposed a punitive damages award of $1,000,000.00 after finding that the defendant's actions were intentional, wanton, willful, and reckless. *See Clayton, et al. v. City of Oxford, Miss., et al.*, N.D. Miss. Cause No. 3:21-CV-174-GHD, Dkt. [64] (May 26, 2022); *see also Grand Biscayne 670, LLC v. 14510 Lemoyne Blvd., LLC*, 2019 WL 1714477, at *3 (S.D. Miss. Apr. 17, 2019 (quoting *Am. Funeral Assur. Co. v. Hubbs*, 700 So.2d 283, 286 (Miss. 1997)) ("To recover punitive damages, the defendant must have 'acted with (1) malice, or (2) gross negligence or reckless disregard for the rights of others.'") (additional citation omitted).

It would be hard for the Court to imagine a case more deserving of a punitive damages award. After hitting Robinson on multiple occasions, Patterson poured liquid fire on her, causing

her to suffer significant and permanent scarring, resulting in the need to undergo twelve surgeries. Patterson's conduct was intentional, wanton, willful, and reckless, so much so that it served as the basis for criminal charges for aggravated assault and kidnapping and a twenty-year custody sentence.

The Court finds that a punitive damages award of $1,000,000.00 is warranted. Specifically, the Court finds that such an award will serve to punish Patterson and deter similar future conduct. *See*, *e.g.*, *Abel v. Allstate Prop. and Cas. Ins. Co.*, 2015 WL 1292220, at *5 (N.D. Miss. Mar. 23, 2015) (noting that the "purpose of punitive damages is to punish a tortfeasor and deter others"). Patterson's conduct was unconscionable, and a punitive award is justified.

*Conclusion*

Accordingly, Robinson is hereby awarded compensatory damages against Patterson in the amount of $250,000.00. She is also awarded punitive damages against Patterson in the amount of $1,000,000.00.

In issuing these damages awards, the Court is aware that there may be ongoing litigation in state court against Webster County and perhaps other Defendants. To be clear, it is *not* the Court's intent for these amounts to constitute an offset to any other damages award to which she may receive. Rather, the Court imposes these amounts solely against Patterson.

This CASE is CLOSED.

SO ORDERED, this the 23rd day of August, 2022.

/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE